WHEELER & WILSON MANUF'G CO. (CORLISS v.). See Case No. 3,233.

---

## Case No. 17,502.

### WHEELING v. BALTIMORE et al.

[1 Hughes, 90.] [1]

Circuit Court, D. Maryland. Dec., 1862.

MANDAMUS BY FEDERAL COURTS—CORPORATIONS—RIGHTS OF STOCKHOLDERS — EQUITY JURISDICTION—CITIZENSHIP OF CORPORATIONS—CHARTER POWERS.

1. The power of the United States circuit courts to issue the writ of mandamus is confined to those causes in which it may be necessary to the exercise of their jurisdiction, and therefore such court may entertain a bill in chancery, in cases where mandamus would be an ample remedy in a state court, if it is not a necessary remedy in the United States court.

2. Where an incorporated company would be the proper complainant in a chancery suit, but refuses or elects not to bring the suit when required by a stockholder to do so, and the controversy is between different classes of its stockholders, a court will entertain a bill, brought by a stockholder, to settle such controversy.

3. If a company be incorporated by two states, a citizen of one of the states may sue it in a United States court in the other state in which it is incorporated.

[Cited in Uphoff v. Chicago, St. L. & N. O. R. Co., 5 Fed. 548.]

4. Corporations have no other power than such as are expressly granted by their charter, or as are necessary to carry into effect the powers expressly granted.

1 [Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission.]

5. Under the charter of the Baltimore and Ohio Railroad, granted in 1826, and the subsequent acts of the legislature supplemental thereto, no express authority was given the city of Baltimore to appoint directors to represent an increase of stock derived from a stock dividend, and therefore an appointment by the city of four new directors to represent stock so derived, was held to be illegal.

In equity.

This bill is filed by the city of Wheeling, as a stockholder in the Baltimore and Ohio Railroad Company, on behalf of itself and all others of the private stockholders who, being entitled, shall come in and contribute to the cost of this proceeding.

After alluding to the original act of incorporation of said Baltimore and Ohio Railroad Company, the bill states that by the second section of said original charter, the said city of Baltimore was authorized to subscribe for 5000 shares of stock in said corporation, and that by a resolution of the mayor and city council of Baltimore, approved on the 20th of March, 1827, the mayor was authorized, in pursuance of said act, to subscribe in the name of the said mayor and city council for the said 5000 shares, and did so subscribe. That afterwards, by an act of the general assembly of Maryland, passed at December session, 1835 (chapter 127), the said mayor and city council were authorized to subscribe for 30,000 shares of stock in said company, in addition to the subscription previously made by it, and above mentioned; and that by a resolution of the mayor and city council aforesaid, approved 17th of March, 1836, the mayor was authorized, in pursuance of said last-mentioned act, to subscribe for the said additional 30,000 shares, and did so subscribe. That the said 35,000 shares, so authorized to be subscribed for by the acts aforesaid, are all the shares in said company which the said mayor and city council of Baltimore have subscribed for to the capital stock of said company, and that the said mayor and city council hold no other shares in the capital stock of said company as subscribed for to it, except the 35,000 shares aforesaid. That on the 17th day of December, 1856, the said Baltimore and Ohio Railroad declared an extra dividend of 30 per cent. on the capital stock of the company, payable on or after the 12th January, 1857, to all stockholders holding stock on the 22d day of December, 1856, in certificates of indebtedness, bearing an interest from the 1st day of June, 1857, of six per cent. per annum, payable half-yearly on the 1st day of December and June, in each year, until the 1st day of June, 1862, inclusive, after which last-mentioned date, by the terms of the resolution declaring said dividend, the said certificates of indebtedness should be converted into the stock of the said company at par. That the whole number of shares of stock in the said company, on the 22d day of December, 1856, was 101,102, of which number on that day 59,246 shares were held by the private stockholders in said company. And that on the said last-mentioned

day, the said mayor and city council of Baltimore held and owned no other stock in said company except the 35,000 shares which had been subscribed for by them as aforesaid. That the certificate for the portion of the extra dividend above mentioned, belonging to the said mayor and city council of Baltimore, for and in respect of its said 35,000 shares, was duly delivered to them, and the interest thereon paid up to the 1st of June, 1862, inclusive, since which time, viz., on the 26th day of June, 1862, the said certificate has been converted, pursuant to its terms and the tenor of the dividend resolution, into stock of the said company, amounting to one million and fifty thousand dollars, and that said stock was not subscribed for by the said mayor and city council, or acquired by it in any other way than as heretofore detailed, viz., as the fruit and dividend of its 35,000 subscribed shares aforesaid. And it prays for an injunction against the mayor and city council of Baltimore to restrain them from appointing any persons as directors of the Baltimore and Ohio Railroad Company for or in behalf or in virtue of the stock in said company, acquired by them as and for a dividend under the extra dividend resolution passed by said company on the 17th December, 1856, and that existing appointments of any persons as such directors may be annulled and declared void, and that John A. Thompson, Henry S. Hunt, Aaron Fenton, and John Dennison may be enjoined from taking their seats as directors at the board of the Baltimore and Ohio Railroad Company, or acting in any way as such directors by virtue of their appointment made by the mayor and city council of Baltimore, on the 2d and 3d days of October, 1862, and that the said Baltimore and Ohio Railroad Company may be enjoined from permitting or suffering the said persons from taking seats at its board or acting in any way as directors under any appointments made or that may be made by the mayor and city council of Baltimore, in virtue of the stock so acquired by them as a dividend under the extra dividend resolution aforesaid. An answer has been filed by the mayor and city council of Baltimore, and also by Messrs. Thompson, Fenton, Dennison, and Hunt, the directors appointed by the said city in October last. These gentlemen adopt the answer of the corporation, which is at great length, and present several defences to the relief sought by the complainant. The Baltimore and Ohio Railroad Company have not answered the bill. The corporation claims the right to appoint these four additional directors by virtue of the 7th section of the act of Maryland of 1826, c. 123 (the original act of incorporation of the Baltimore and Ohio Railroad Company), and upon the construction of this act the merits of this controversy depend.

GILES, District Judge. Independent of the merits of this controversy, several objections have been taken by the learned counsel for the defendants to the right of the complainant to the relief sought by this bill. And I shall discuss them in the order in which they were noticed by the counsel for complainant—and first, that the proper remedy in this case is a mandamus which can give full and adequate relief if complainant is entitled to any; and that equity will never interfere by injunction where there is full and adequate relief in a court of law. I grant that if this were a case in one of the courts of our state, the objection would be unanswerable. The courts of the state, having full power to grant a mandamus where such a remedy is appropriate and adequate to give the relief sought, would not and ought not to interfere by the exercise of its equity jurisdiction, which supposes that the party has no adequate relief at law.

But how stands the matter in a court of the United States? By the 14th section of the judiciary act of 1789 [1 Stat. 81] c. 20, it is enacted "that all the beforementioned courts of the United States shall have power to issue writs of scire facias, habeas corpus, and *all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions,* and agreeable to the principles and usages of law." It is under that part of the section I have italicized that the courts of the United States derive their authority to issue a mandamus. It is only in cases where it is necessary to the exercise of their respective jurisdictions. One of the learned counsel for the defendants contended that it was within the true meaning of this section, when the mandamus was issued in a case over which the courts of the United States had jurisdiction, from the character of the parties to it, or otherwise—although the mandamus might have been the original process in the case. But this is no longer an open question in this court. The supreme court has decided in [Riggs v. Lindsay] 7 Cranch [11 U. S.] 504, that the power in the circuit courts to issue the writ of mandamus is confined exclusively to those cases in which it may be necessary to the exercise of their jurisdiction. And they held that the circuit court did not possess the power to issue the writ in that case, which was a motion to issue a mandamus to a register of a land office in Ohio. I understand this decision as construing the 14th section of the act of 1789 to give the power to issue the writ of mandamus only in aid of a judgment of the circuit court. And this is made clear by reference to the cases of McClury v. Silliman, 6 Wheat. [19 U. S.] 598; Kendall v. U. S., 12 Pet. [37 U. S.] 617; Wayman v. Southard, 10 Wheat. [23 U. S.] 22; and Board of Com'rs of Knox Co. v. Aspinwall, 24 How. [65 U. S.] 384. In McClury v. Silliman, Justice Johnson, delivering the opinion of the supreme court, says: "It is now contended that as the parties to this controversy are competent to sue under the eleventh section, being citizens of

different states, this is a case within the provisions of the fourteenth section, and the circuit court was vested with the power to issue this writ, under the description of 'a writ not specially provided for by statute,' but 'necessary for the exercise of its jurisdiction.' " This is the ground taken, as I understand, by the counsel in this case. Justice Johnson says: "The fourteenth section of the act under consideration could only have been intended to vest the power now contended for in cases where the jurisdiction already exists, and where it is to be courted or acquired by means of the writ proposed to be sued out." And the supreme court in sustaining the writ of mandamus issued by the circuit court for the District of Columbia, in the case of Kendall v. U. S. [107 U. S.] 437, did it upon the ground that that court was vested with broader power and jurisdiction in this respect than are vested in the circuit courts of the United States in the several states. I am of opinion, therefore, that this objection is not valid.

The second objection urged by the defendant's counsel is, that the bill should have been filed in the corporate name of the "Baltimore and Ohio Railroad Company," and that this is not one of those cases in which a private stockholder has the right to institute proceedings in his own name.

Now the bill alleges "that the said company in its corporate capacity has made no defense, nor taken any steps in denial of the pretensions aforesaid of the said city of Baltimore, although respectfully requested to do so by your orator, which through its counsel adressed to the president and directors of said company the two notes, copies of which are herewith filed, to neither of which has any answer been made; and that your orator has reason to apprehend, and does apprehend and charge, that the said company does not intend to initiate any proceedings in the premises, but means to leave the private stockholders to defend themselves." The failure of the company to reply to the two notes of the complainant's counsel, and to file an answer to this bill, shows clearly that this charge of the bill is true. And inasmuch as the facts of the case show that there are three classes of stockholders in the Baltimore and Ohio Railroad Company whose interests in reference to this controversy are in conflict, there is wisdom in the course pursued by the president and directors of the company. They could not with propriety take sides with either class of stockholders. For this reason, if for none other, the private stockholders should be permitted to file a bill in their own name, to have this controversy between themselves and the other stockholders of the company finally decided, and to obtain such relief in the premises to which they may show themselves entitled.

But I consider this case within the spirit of the decisions made in the two cases referred to in the argument, viz., Campbell v. Poultney, in 6 Gill & J. 102; and Dodge v. Woolsey, 18 How. [59 U. S.] 344. Whenever the course pursued by the corporate body would amount to a breach of trust, or be a violation of the chartered rights of the stockholders, and there exists no adequate remedy at law, a court of equity will interfere, and its powers may be put in motion by a single shareholder, though it is usual for him to act for himself and all the other stockholders similarly situated who will come in and contribute to the expense of the suit. Much stronger, however, is the claim of this complainant to be permitted to institute these proceedings in its own name, as I have shown that the corporation which represents all its shareholders could not with propriety institute this proceeding.

The third objection is to the jurisdiction of the court. It is contended by the defendant's counsel, that inasmuch as the charter of the Baltimore and Ohio Railroad was confirmed by the legislature of Virginia, said company became a corporation of that state; the complainant, which is also a corporation of Virginia, cannot institute any proceedings against the said railroad company in this court. But this, too, is no longer an open question, the very point having been decided by the supreme court in the case of Marshall v. Baltimore & O. R. Co., 16 How. [59 U. S.] 314. Marshall was a citizen of Virginia, and as such sued the Baltimore and Ohio Railroad Company in this court, and the supreme court held that the suit was properly instituted.

Having thus disposed of the objections to the character and form of this bill, and to the nature of the relief sought by it, I now come to the merits of this controversy. The corporation of Baltimore claim that they have the right, as the owner of the stock which has accrued to them by virtue of the extra dividend resolution, to appoint four additional directors in said company. And the counsel for the city claim this by virtue of the 7th section of the original charter of the Baltimore and Ohio Railroad Company. So much of that section as relates to this subject is in the following words: "And be it enacted, that to continue the succession of the president and directors of said company, twelve directors shall be chosen annually, on the second Monday of October in every year, in the city of Baltimore, by the stockholders of said company, and that the state of Maryland and the city of Baltimore may each appoint one additional director of said company for every twenty-five hundred shares of stock of said company by them respectively owned at the time of such election, but shall not be permitted to vote upon their stock in the election of the directors by the stockholders in general meeting." And that part of the 2d section of said act to which I shall have occasion to refer, is in the following words: "That the capital stock

of the Baltimore and Ohio Railroad Company shall be three millions of dollars, in shares of one hundred dollars each, of which ten thousand shares shall be reserved for subscription by the state of Maryland, and five thousand by the city of Baltimore, for the space of twelve months after the passage of this act by the legislature of Maryland, and the remaining fifteen thousand shares may be subscribed for by any other corporation or by individuals."

The 11th section of the act is as follows: "That if any of the fifteen thousand shares of the capital stock of the said company, not reserved to the city of Baltimore or the state of Maryland, shall remain unsubscribed until the organization of the said company, or if the shares of the capital stock hereinbefore reserved for the said state or city, or any part of them, shall not be subscribed by the said state or city respectively during the time for which such stock is reserved for them, in either case the president and directors of the said company, or a majority of them, shall have power to open books, and receive subscriptions to any of the capital stock of said company which may thus remain unsubscribed for, or to sell and dispose of such unsubscribed stock for the benefit of the company, for any sum not under its par value," etc.

Under this act the city subscribed for the five thousand shares reserved for her within the time specified, and appointed two directors, and has appointed them annually ever since, as she has never parted with the said stock. The only other subscription the city has ever made to the Baltimore and Ohio railroad, was a subscription made in 1836, of thirty thousand shares, by virtue of the authority given to the city by the act of assembly of 1835, c. 127. The 1st section authorized the city to subscribe to the capital stock of the Baltimore and Ohio Railroad Company any amount not exceeding three millions of dollars over and above the sums heretofore subscribed by them. And the 4th section of said act authorized the city to appoint an additional director for every five thousand shares of the stock of the said company for which the city might subscribe in pursuance of that act, and which shall be owned by the city at the time of the annual election, with this proviso at the end of said section: "Provided that nothing herein contained shall be taken to impair the right which the city has to have two directors of the said company for the five thousand shares already held by it, whether it should make the subscription hereby authorized or not, nor in any event to have more than twelve directors of said company." Now it is contended that the authority of the city to appoint a director for every two thousand five hundred shares of stock owned by said city, at any election, is not to be limited to the five thousand shares which the city was authorized to subscribe for by the second section of said original act, but was an authority to appoint an additional director for any two thousand five hundred shares which the said city might subscribe for or purchase at any future time. Now this construction would be plausible if the city possessed the authority, in 1826, to subscribe for this or any other railroad stock, independent of any special grant of power or authority from the legislature. The counsel for the city contend that it had such power by virtue of the general authority contained in the first section of its charter (act of 1796, c. 68), "to purchase and hold real, personal, and mixed property, and to dispose of the same for the benefit of the city." Now it is admitted that if you cannot find this power for the city in its charter, it does not exist. For corporations (and in this aspect there is no difference between municipal and other corporations) have no other powers than such as are expressly granted, or such as are necessary to carry into effect the powers expressly granted. As authorities upon this point, if any are wanted to sustain so clear a proposition, I refer to the following cases: Perin v. Chesapeake & D. Canal Co., 9 How. [50 U. S.] 184; Mayor, etc., of Baltimore v. Hughes, 1 Gill & J. 481; Cohen v. Virginia. 6 Wheat. [19 U. S.] 264; New London v. Brainard. 22 Conn. 555; Beatty v. Knowler, 4 Pet. [29 U. S.] 152; City of Lafayette v. Cox, 5 Ind. 38; Hodges v. City of Buffalo, 2 Denio, 112; Kane v. Mayor, etc., of Baltimore, 15 Md. 247. The case in 5 Indiana was very similar to this case. The city of Lafayette had undertaken to issue bonds to aid in the construction of a railroad, relying upon the authority given to it in its charter to create a debt to a limited amount, but the court decided that the authority to create a debt was limited to a debt to carry out the objects specified in the charter.

I hold it to be very clear, therefore, that the authority to the city in the 1st section of its charter to purchase real, personal, and mixed property, is limited to the purchase of such as may be necessary for the purposes of the corporation, such as houses for its public offices to be held in, and furniture to fit them up, or to such as may be necessary to enable the city to execute the powers conferred upon the said corporation by the 8th section of said act of 1796. And I am sustained in this view by the acts of the city and the legislature of this state from 1826 to the present time. The city has never subscribed to any work of internal improvement without seeking a special authority from the legislature of the state for that purpose. This is a legislative interpretation of the city charter for a period of sixty-six years. To some of these laws I will now refer.

The act of 1831, c. 214, § 2, gave to the city the authority to aid in the construction of any useful public work authorized by any law of the state to the extent of $1,000,000. Act 1835, c. 395, gave authority to the city to subscribe for such part of the capital stock of the Maryland Canal Company, and the Balti-

more and Ohio Railroad Company. as shall not be subscribed by individuals. Act 1853, c. 269, gave authority to the city to aid in the construction of the Pittsburg and Connellsville Railroad. Act 1854. c. 260. § 4, authorized the city to subscribe to the Susquehanna Railroad Company, and the acts of 1826 and 1835, to which I have referred in a former part of this opinion. The city having then no power, in 1826, to subscribe for shares in the Baltimore and Ohio Railroad Company but what that act in its 2d section gave, must not the authority given to the city in the 7th section to appoint one director for each two thousand five hundred shares by it owned, be limited to appoint directors for that five thousand shares, and for none other? They could subscribe for no further shares without a new grant of power from the legislature; and we see that when the legislature made a new grant of power in 1835. they fixed a new basis of representation in the board of directors, and authorized the city to appoint an additional director for each five thousand shares of stock by the city subscribed under the act. Now the proviso of the 4th section of that act has been much relied upon to warrant a different construction of the act of 1826. I remark, in the first place. that the act of 1835 is a special act to give authority to the city, and is not a supplement to the charter of the railroad; and although by the railroad receiving the city's subscription, they were bound to admit the six directors for whose appointment that act provided, yet that act no further bound the railroad company, or altered in any other manner the chartered rights of the railroad. Besides. the office of a proviso is almost universally to limit, and not to enlarge power. The power now claimed for the city must be found, if it exists at all, in the 7th section of the act of 1826. It will be observed that it was optional with the city whether it would subscribe for any amount of stock under that act, and the legislature contemplated a contingency of that kind when, in the 11th section. it provided for a sale, etc., of such part of the stock reserved for the city as it might decline to subscribe for within the time specified. It was the same contingency, or a sale of her stock after subscription by the city, that the legislature evidently had in view when they used the word "owned" in the 7th section. I am therefore of opinion that the city has no legal authority to appoint these four additional directors. and if the act of 1835 had not contained the authority to appoint the six directors as provided in the 4th section. no such right would have existed in the city. This extra dividend stock has been issued by the president and directors of the Baltimore and Ohio Railroad Company to fund the certificates of indebtedness which had been given to the stockholders of said company for net profits borrowed from them from time to time, and was the exercise of a power clearly granted by the 13th section of the charter. It is. then, so many new shares

added to the capital stock of the company. with only such privileges as belonged to the original capital stock. and not having the special privilege or restriction in reference to that part belonging to the state and city which the legislature thought proper to grant and impose in the 7th section of the original charter. I will therefore grant the injunction for which the complainant has prayed in his bill.