BALTIMORE, C. & A. RY. CO. v. GODEFFROY et al.

(Circuit Court of Appeals, Fourth Circuit. October 13, 1910.)

No. 963.

CORPORATIONS (§ 189*)—SUIT BY PREFERRED STOCKHOLDERS—PARTIES.

To a suit by the holders of the preferred stock of a corporation to establish their right to a lien on the franchises and property of the corporation, given by a statute of the state to a certain class of preferred stock, the common stockholders are indispensable parties, and either all, or some, as representatives of all, should be joined with the corporation as defendants; the suit being in effect one between different classes of stockholders in which the corporation is presumptively indifferent and does not represent either class as against the other.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 189.*]

Keller, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Maryland.

.Suit, in equity by Adolph E. Godeffroy, Dwight D. Mallory, and others against the Baltimore, Chesapeake & Atlantic Railway Company. Decree for complainants, and defendant appeals. Reversed.

Bernard Carter (Nicholas P. Bond, on the brief), for appellant.

Taylor, Keech, Wright & Lord (Willis & Homer, on the brief), for appellees.

Before GOFF, Circuit Judge, and WADDILL and KELLER, District Judges.

GOFF, Circuit Judge. This appeal is from a decree passed by the court below in accordance with the prayer of the complaint, which was in the nature of a bill for specific performance, filed by the appellee Adolph E. Godeffroy, on behalf of himself and of all others in like situation who might join with him, to compel the execution and recordation of an agreement, alleged to have been provided for under the terms of a statute of the state of Maryland, relating to certain securities called preferred stock that had been issued by the appellant, the only defendant to the bill so filed.

It appears from the allegations of the bill: That the appellee Godeffroy is the holder of 242 shares of the par value of $50 each of the preferred stock of the appellant, a corporation organized under the provisions of the general corporation law of the state of Maryland—applicable to railroads—as found in article 23 of the Code of Public General Laws of that state, adopted in the year 1888, and as included in article 23 of its Code of Public General Laws adopted in the year 1904. · That the Baltimore & Eastern Shore Railroad Company was a Maryland corporation which owned and operated a line of railroad in said state, running from the eastern shore of the Chesapeake Bay to the Atlantic Ocean, and that on the 1st day of July, 1890, it conveyed its franchises, line of railroad, and equipment unto the Atlantic Trust Company, a corporation of the state of New York, as trustee, to secure the payment of the principal and interest of $1,600,000 first mortgage 5 per cent. bonds, bearing even date with said deed of trust, and maturing July 1, 1920. That on April 11, 1891, default having been made in the payment of the interest due on said bonds on the 1st day of January, 1891, the Scranton Steel Company filed a bill in the Circuit Court of the United States for the District of Maryland against said railroad company, and that by said court a receiver was appointed who operated the road until August 31, 1891. That pending the receivership the bonds of the railroad company, then outstanding, were deposited with said trustee, subject to the control of a bondholders' committee, under an agreement that the bonds should be entitled to receive an equal part of the proceeds of any sale or other disposition of the property. That said committee made an agreement with one John E. Searles, representing himself and associates, to reorganize the finances and affairs of said railroad as follows, viz.: The mortgage to be foreclosed and the property and franchises bought in at the sale, the road then to be consolidated with certain lines owned by the Eastern Steamboat Company of Baltimore City, the Maryland Steamboat Company of Baltimore City, and the Choptank Steamboat

Company of Baltimore City, the agreement being that the railroad and steamboat properties should be conveyed to and owned by a new corporation, with the following capitalization, viz., common stock $1,-000,000, preferred stock $1,500,000, 5 per cent. gold bonds $1,250,000, making a total of $3,750,000, the bonds to be secured by a first mortgage upon all the railroad and steamboat properties of the proposed corporation, the preferred stock to be "statutory preferred stock," within the meaning of the statutes and laws of the state of Maryland, entitled to a cumulative dividend at the rate of 5 per cent. per annum (instead of at the rate of 6 per cent. as provided by the Maryland statute), the same to constitute a lien upon the franchises and property of the new corporation, subject only to the lien of the mortgage securing the $1,250,000, 5 per cent. first mortgage bonds, with the understanding that the owners of the bonds of the said Baltimore & Eastern Shore Railroad Company should receive 65 per cent. of the par value of the same in the preferred stock of the proposed corporation. That in pursuance of said plan a petition for the foreclosure of the lien secured to the bonds of said Baltimore & Eastern Shore Railroad Company was filed by the Atlantic Trust Company, as trustee, in the receivership proceedings mentioned, and a decree for foreclosure and sale was duly entered, whereby a special commissioner was appointed to make the sale, which took place on the 29th of August, 1894, when Nicholas P. Bond became the purchaser, at the price of $400,000, which sale was confirmed by the court, and the said railroad property with all its rights and franchises was by the commissioner and the purchaser conveyed to the defendant below, by deed, which was duly recorded. That immediately thereafter, in execution of the plan of reorganization, the nominal purchaser with his associates organized the defendant corporation in manner as provided by section 187 of article 23 of the Code of Maryland of 1888, and various meetings of the stockholders and directors of the company were held in order to take the corporate steps necessary to carry into effect said plan and agreement. That at one of these meetings the corporation authorized the issue and delivery of the entire amount of the capital stock provided for by its charter, to wit, $1,000,000, divided into 20,000 shares of the par value of $50 each, to the said purchaser and his associates, in payment for the railroad so purchased. That then, after the capital stock was all so issued and outstanding, a meeting of the owners of all thereof was held for the purpose of authorizing the issue of the preferred stock as had been theretofore agreed upon, and in the exercise of the powers conferred upon the corporation by the provisions of section 294 of article 23 of the Code of Public General Laws of the State of Maryland of 1888, known as section 408 of article 23 of the Code of Maryland of 1904, said corporation authorized and directed the issue of a preferred stock of the aggregate amount of $1,500,000, divided into 30,000 shares of the par value of $50 each, which said stock was declared to be entitled to a cumulative dividend of 5 per cent. per annum, and was constituted a lien upon the franchises and property of the corporation, and as such had priority over any subsequently created mortgage or other incumbrance, and the officers of the corporation were authorized and di-

rected to do all things necessary to the proper and lawful issue of such preferred stock, and to deliver the same to such purchaser in further payment of the purchase price of said railroad; the certificates for the same to be in such form as the counsel for the corporation and its board of directors should determine. That at a meeting held on the same day, before any of the certificates for the preferred stock had been issued, but at which the owners of all the shares of the common stock as well as all the shares of the preferred stock were present, it was unanimously resolved that for the purpose of providing the means to pay for the steamboat properties, and to secure funds for other corporate purposes, the defendant corporation should issue $1,250,000, par value, of first mortgage 5 per cent. gold bonds, and that the action of the directors of the corporation relating to the authorization and issue of such bonds be approved, and that the mortgage securing said bonds should constitute a first lien on the franchises and property of the corporation. That in order that the mortgage securing said bonds might constitute a first lien upon the franchises and property of the defendant corporation, as provided for in the plan of reorganization, it was necessary that the lien then existing in favor of the preferred stock upon said franchises and property prior to subsequently created mortgages or incumbrances, should be waived in favor of the lien of the mortgage securing the said bonds, and that it was therefore at that meeting also unanimously resolved by the holders of the entire preferred stock, all of whom were present in person at said meeting, as follows:

"Resolved: (1) That we, the holders of every share of preferred stock of the Baltimore, Chesapeake and Atlantic Railway Company, do hereby consent to the execution and delivery of the mortgage submitted to us, with the full understanding that the same is and shall be a first lien upon all property of the Baltimore, Chesapeake and Atlantic Railway Company now held by it, or hereafter to be acquired. And resolved: (2) That we do agree that in each certificate of preferred stock now or hereafter issued there shall be stamped or inserted, substantially the following words, 'This stock is subject only to the prior lien of a mortgage dated the first day of September, 1894, executed to secure twelve hundred and fifty, one thousand dollar, first mortgage five per cent. gold bonds, and the renewals and extensions thereof.' And resolved: (3) That in testimony of our consent and agreement thereto, we do as individual holders of said stock, sign this resolution as spread upon the minutes of the meeting."

That each and all of the holders and owners of said preferred stock did in fact subscribe to that resolution, and did subject the lien of their preferred stock, then existing upon the property and franchises of the defendant to a prior lien in favor of said mortgage, dated September 1, 1894, securing the $1,250,000, first mortgage 5 per cent. gold bonds, and the renewals and extensions thereof. That the directors of defendant corporation at a meeting held on said 31st day of August, 1894, as they were all authorized to do by the owners of the common or capital stock, prescribed the form of the certificates for the preferred stock in which it was recited that said stock was entitled to preference and priority over the capital stock to semiannual dividends to be paid out of the net profits of the company at the rate of 5 per centum per annum; such dividends to be cumulative, and the stock to be entitled to no other share of the profits, the holders of the

stock to vote at all meetings of the stockholders and at all elections of the company, in the same manner as the holders of the capital stock, and the stock to be subject only to the prior lien of a mortgage executed to secure 1,250 $1,000 first mortgage 5 per cent. gold bonds. That said purchaser caused the railroad property to be conveyed to the defendant by a proper deed, and that defendant issued to him, or on his order, certificates for the entire amount of the preferred stock, when the 242 shares thereof so held by complainant were secured from or through said purchaser, and that all of the preferred stock is now outstanding in like manner either in the hands of the original parties to said reorganization agreement, or in the hands of persons who have purchased it in due course of business, who took the same relying upon such certificates, as well as upon the facts before stated. That all said proceedings were had in pursuance of the plan to reorganize the Baltimore & Eastern Shore Railroad Company, and to consolidate the property thereof with the property of the several steamboat companies mentioned, which constituted a contract between the defendant on the one part, and the complainant and the other holders of such stock on the other part, which bound the defendant to have done all acts and things necessary to the lawful and valid issue of said preferred stock, being such a contract that if at any time it should appear—as it has now appeared—that any act necessary to the sufficient issue of such stock was omitted to be done, then the defendant was bound to supply and make good such defect immediately. That, in order that said stock shall have been validly and perfectly issued under said section 294 of article 23 of the Code of Maryland of 1888, it was proper that defendant should have caused to be executed an agreement under seal to be acknowledged as conveyances of land are required to be acknowledged, and recorded in the office of the clerk of the Circuit Court where the principal office of such corporation was situated, guaranteeing to the purchasers of such stock a perpetual dividend of 6 per centum per annum, out of the profits of the corporation, before any dividend is distributed to any of the stockholders other than those holding preferred stock, and that it remains the duty of the defendant to execute the agreement before mentioned, and to record the same in the office of the clerk of the Circuit Court of Wicomico county, wherein defendant's principal office is located; the perpetual dividend to be at the rate of 5 per centum as agreed, instead of 6 per centum as provided by the statute.

The bill then charges that the defendant has neither filed such agreement, nor has it caused the same to be executed under its seal and acknowledged in the manner provided for, but that in fact no agreement or certificate of the issue of said preferred stock has ever been made and recorded; that complainant relied upon the fact that such stock had been issued in pursuance of the understanding mentioned, and believed that all things necessary to the valid and proper issue thereof had been done by the defendant, and did not in fact know that all such steps had not been taken until during the month of May, 1908, when by accident he discovered that the defendant had failed to execute and record the certificate or agreement required by

182 F.—34

the Maryland Code before mentioned, and he was soon thereafter advised by the secretary of the defendant that such certificate or agreement had not been executed, that official claiming that, while the said preferred stock had been intended to be "statutory preferred stock," such as was authorized by section 294 of article 23 of the Code of Maryland of 1888, defendant had not executed and recorded the agreement required by that statute because the holders and owners of all said preferred stock had expressly waived the right to have it constitute a lien upon the franchises and property of the defendant, or to have priority over any subsequently created mortgage or other incumbrance, and also that, while the defendant elected and exercised the right to issue said preferred stock under the provisions of said section, still it did not intend or contract to accord to that stock the lien provided for by the statute, and that consequently it did not exercise the right of executing and recording the agreement mentioned.

Complainant avers: That it is not true that the lien given by law to the preferred stock was waived in favor of all subsequent creditors, secured and unsecured, and insists that the original takers of that stock did not waive their right to have the same constitute a lien upon said franchises and property, and have priority over all subsequently created mortgages and other incumbrances, but that they waived the first lien to which they were entitled upon the franchises and property mentioned only in favor of the lien of the mortgage or deed of trust securing the first mortgage 5 per cent. gold bonds, dated September 1, 1894, and the renewals thereof, but in favor of no other lien or credits, whether secured or unsecured. That the claim by defendant that it was not agreed that a lien should be given to the preferred stock is untrue, and that defendant not only intended to issue that stock in pursuance of said section 294, but also recognized the existence of the lien accorded to it by that section, and required that it be waived in favor of the lien of the mortgage securing the bonds referred to, and caused such waiver to be noted upon the stock certificates in the words before mentioned. That defendant is guilty of a gross fraud upon the rights of complainant and the other owners of said preferred stock for the following reasons: First, because defendant's conduct constitutes a breach of the contract between it and the takers and owners of said stock; second, because having resolved to issue said stock, and having in fact issued it in the manner mentioned, it became the duty of the defendant to execute and record said agreement in discharge of its duty under the laws of the state of Maryland, as well as its duty to the takers and owners of the stock; third, because the said stock was issued upon the express and implied representations and agreement mentioned, which were relied upon by complainant and other takers and owners thereof, as constituting a lien upon the franchises and property of the defendant, having the priority before described.

Complainant insists that a court of equity has adequate power to require the defendant to do all such things as are necessary to the perfect and lawful issue of said preferred stock, and to that end to require it to perform the said contract relating to the stock, and to execute and record the agreement as provided for by said statute.

The defendant in its answer admits the allegations of the bill relating to its incorporation under the Maryland statutes; admits that the Baltimore & Eastern Shore Railroad was organized and operated as charged in the bill, and that the suit for foreclosure was instituted, but has no knowledge that it was filed in pursuance of any plan for reorganization; admits the sale of the road and its purchase and confirmation thereof as alleged; admits that all of the property referred to was duly conveyed to it; and concedes the regular organization of defendant company, but has no knowledge that the same was in execution of any agreement of reorganization except such as is found in the certificate by which it was organized; claims that it is not and could not be bound by the terms of any agreement entered into by any persons prior to its formation as a corporation; admits that a proposition was made to it by the purchaser of the Baltimore & Eastern Shore Railroad to sell to defendant all of the property purchased by him when the assets of that company were sold, and to receive as part payment for the same common stock of defendant, which proposition was accepted and such stock was therefore issued to the purchaser, who then offered to take in payment of the balance due him either first mortgage bonds of defendant, or $1,500,000, of preferred stock; and defendant denies that the proceedings then taken by its directors were in pursuance of any plan entered into by defendant, to or with the bondholders of the Baltimore & Eastern Shore Railroad Company, or in pursuance of any plan or agreement between defendant and any person, except the agreement shown by the minutes of the meeting of its directors and its stockholders, which defendant claimed made record of the fact that the purchaser offered said property to it for the sum of $2,500,000, agreeing to take in part payment 20,000 shares of the fully paid-up capital stock of defendant of the par value of $50 each, which was duly accepted and said stock issued, the purchaser accepting the same and receipting for $1,000,000 on account of said purchase price, and that the stockholders duly accepted the offer of said purchaser to receive in full payment of the balance due him, $1,500,000 of cumulative 5 per cent. preferred stock, and authorized certificates to be drawn and delivered therefor, which was done, the certificates reading that the company was incorporated under the laws of the state of Maryland, that such stock was entitled to preference, and priority over the capital stock of the company, to semiannual dividends to be paid out of the net profits of the company on the 1st days of March and September in each year at the rate of 5 per centum per annum, such dividends to be cumulative, and the stock to be entitled to no other share of the profits, the holders of it being entitled to vote at all meetings of the stockholders and at all elections of the company in the same manner as the holders of the capital stock, it being further recited in the certificates that the stock was subject only to the prior lien of a mortgage dated September 1, 1894, executed to secure 1,250 $1,000 first mortgage 5 per cent. gold bonds, and the renewals thereof.

Defendant, further answering, denied that it was or is bound to issue any other or different stock either preferred or common than the stock it agreed to issue as mentioned in the resolutions of its di-

rectors and stockholders, and which it avers it did issue, and denied that in and by those proceedings the issue of said preferred stock was constituted a lien upon the franchises and property of defendant, and that as such it had priority over any subsequent mortgage or other incumbrance as claimed by complainant. Defendant admits that the issue of mortgage bonds of $1,250,000 was duly authorized for the purpose of providing the means to pay for certain steamboat properties purchased by defendant, and admits that the resolutions set forth in the bill relating thereto were duly passed, but denies that it was then necessary that they should be passed for the purpose of waiving a lien then existing in favor of the preferred stock on the franchises and property of defendant, as is charged in the bill, and denies that any such lien in favor of the preferred stock then existed or now exists, and avers that the sole purpose of said resolutions was to make it clear that the mortgage bonds referred to in them were to be a first lien on all of the property of defendant; the resolutions having been passed out of abundant caution only. Defendant admits that all owners of the preferred stock subscribed to said resolutions, and that the mortgage bonds referred to were and are a first lien upon all its property and franchises, but denies that, prior to the subscribing of said resolutions by the holders of preferred stock, such stock had a lien upon defendant's property and franchises. Further answering, defendant denies that there is any obligation upon it to execute an agreement under its seal constituting such preferred stock a lien upon its property and franchises, or guaranteeing to the purchasers of the same a perpetual dividend thereon, or that defendant ever agreed that any dividend should be due and payable on the same save and except such an amount as might be declared semiannually out of the net profits of the company by the directors thereof, not exceeding 5 per centum in any one year, and that the true intent and meaning of the contract was that the preferred stock should be entitled in preference and priority over the common capital stock of the company, to an annual dividend of 5 per centum, if the company should in fact earn net profits out of which to pay the same, and that the holders of said preferred stock were further entitled, if the company should not make profits in any year sufficient to pay the full 5 per cent. dividend on its preferred stock, to have the dividends so left unpaid paid out of the net profits made by the company in future years, and that no dividend should be paid upon the common stock until all such accumulated unpaid dividends should have been paid in full, and defendant avers the said preferred stock is entitled to the dividends mentioned, and is not entitled to require that the same be secured by any lien upon its property and franchises, and admits that it has not filed an agreement guaranteeing the perpetual yearly or semiannual dividend on said stock, claiming it was not required so to do. Defendant also sets forth that complainant has been one of its stockholders since the year 1894, and could have by the exercise of ordinary diligence informed himself long since of all the matters alleged in his bill, in which it is not charged that any of the things so set out were concealed from him by defendant; hence, as he has slept on his rights for 14 years, he is not now entitled to relief concerning them in a court of equity.

To this answer of defendant a general replication was filed by complainant, and by an order of the court below a special examiner was appointed to take such depositions as the parties to this litigation might wish to submit.

On the 5th day of February, 1909, on the petition of Dwight B. Mallory and nine others, holding together 1,094 shares of said preferred stock, an order was entered in this cause by the court below, making them parties complainant thereto, as if they had been named in the original bill.

The special examiner proceeded to take the depositions of a number of witnesses tendered by complainants, which were in due time certified to and filed in the court below.

The defendant took no depositions, and, the cause having been submitted by complainants for final decree, insisted that the allegations of the bill had not been sustained by the proof offered, and also that the record clearly disclosed that the court was asked to dispose of a controversy in which it was apparent that there was a defect of parties; the common stockholders as such not having been brought before the court and not having been given an opportunity to protect their interests. The court below, not being impressed by these suggestions, entered a decree in favor of complainants, fully sustaining their contentions, and requiring the defendant to comply with the prayers of the bill. From this decree the appeal now to be disposed of was allowed.

There are a number of assignments of error; but the only one in fact insisted on by counsel for appellant, and the sole one we will consider, is that which assigns that the court below erred in entering the decree complained of when the holders of the common stock of the defendant company were not as such before it. We have with a minuteness not usually found necessary stated all of the averments and admissions found in the pleadings, from which the necessity for the rule which impels the conclusion we reach is shown. The question involved is one of practice, and it is not intended by our judgment to decree whether or not, if the court below, by its record, had been in condition to finally pass upon the questions of fact disposed of by it, it erred in entering the decree it did, on the testimony submitted to it. We do not now consider the testimony; we pass upon no questions involving the facts of this controversy. The evidence may not be changed, by the bringing of additional parties before the court, and the final decree herein may be, so far as these facts are concerned, based on the record now before us; but we are not to presume that such will be the case, and we find it to be our duty to see that the parties whose interests are disposed of by the decree complained of are given an opportunity to be heard on the issues joined in this litigation. It is a question that may be of vital importance in controversies of this character. We hesitate to affirm a decree that adjudicates matters relating to the value of the common stock of the appellant corporation, when the holders of that stock (none of them) were not given a day in court. The decree appealed from declared that the preferred stock was validly issued, and that it is entitled to a perpetual dividend

of 5 per centum per annum, to be paid out of the net profits of the corporation, payable semiannually, before any dividend is distributed to any of the stockholders other than those holding said preferred stock, and also that such stock is entitled to a lien upon the property and franchises of the company. The decree in fact relates only to questions important to the preferred and common stockholders of the corporation. The holders of the preferred stock were before the court, the corporation was a defendant, the acts of the corporation were drawn in question, and those acts involved directly the interests of both the preferred and the common stockholders created by them. The company represented both classes of stock, and between them should have been, and doubtless was, disinterested and impartial. It was not the duty of the company to espouse the cause of the common stockholders, nor was it called upon to sustain the contention of the holders of the preferred stock. Surely the company which issues different classes of stock is not to be expected to determine the controversies existing between the holders of such stock, relating to the dividends thereon, and to the distributive interests thereof in the assets of the corporation when it is dissolved. While it is true that a corporation in a suit against it represents all of its stockholders, when the claim of the complainant relates to matters common to all classes of its stockholders, and in which all have a community of interest, nevertheless it is also true that where the suit involves a conflict between the different classes of its stockholders, and the main contention of the complaint affects the interests of such stockholders in the company—as between themselves—then the representative character of the corporation ceases, and the classes so involved become necessary parties to the litigation. In this connection we approve and quote from a decision of the Circuit Court of Appeals, Eighth Circuit (Weidenfeld v. Northern Pacific Railway Co., 129 Fed. 305, 311, 63 C. C. A. 537, 543):

"It is true that, generally speaking, a corporation is the proper representative of all of its stockholders in a suit in which the relief sought will affect each and all of them in the same way and to the same degree. In one sense all of the stockholders are the corporation, and the corporate body, as a legal entity, may be intrusted with the defense of those rights which are common to all. Obviously, the very foundation of this rule is a community of interest, with respect of the object of the suit, between the corporation and all of its stockholders. But where the gravamen of the complaint consists of a vital conflict of interest between the corporation and one or more of its stockholders, or between different stockholders, or classes of stockholders, the reason for the rule concerning the representative character of the corporation ceases."

Relating to this question, Judge Lurton, in Taylor v. Southern Pacific Railway Co., 122 Fed. (C. C.) 147, 153, said:

"The second ground for maintaining that the Union Pacific Railroad Company is a party by representation is based upon the very obvious rule that the corporation represents its shareholders in the defense of all suits which involve corporate rights or functions. But this principle only applies where the matter litigated is a corporate matter, as distinct from a right which pertains only to one in his character as the owner and holder of particular shares. What right has the Southern Pacific Company to conclude or affect the right of any shareholder in respect of the ownership or incidents of his particular shares? Of what interest is it to the corporation, con-

sidered as an entity or as a body of stockholders, whether particular shares are owned or voted by A., rather than B., or whether C. is capable of holding or voting shares at all? It is a question which may indirectly affect other shareholders; but it is clearly not a question which concerns the corporation, as such, or any of its functions. But it has been urged that the idea of a corporation as a legal entity separate and apart from the body of persons composing its stockholders is a fiction which should be ignored whenever used for purposes not within the intent of the device, and that in a case like this a suit against the corporation should be regarded as a suit against every corporator, and therefore a suit to which the Union Pacific Railroad Company is a party by representation. If the issue made with the Union Pacific Railroad Company in its character as stockholder of the Southern Pacific was one which was common to all the stockholders, there would be some room for regarding the litigation as involving a corporate matter, interest, or function. But the question made is one which does not apply to the stockholders as a body. Its solution depends absolutely upon a state of facts peculiar to the particular stockholder, and its decision will affect directly the property rights of that owner alone, and does not directly concern any other stockholder as such. A judgment or decree against a corporation in respect to corporate matters necessarily binds its members, in the absence of fraud, because, as stated by Fuller, C. J., in Hawkins v. Glenn, 131 U. S. 319, 332 [9 Sup. Ct. 739, 743 (33 L. Ed. 184)], 'this is involved in the contract created in becoming a stockholder.' No such reason exists when the judgment or decree against the corporation does not involve some corporate duty, obligation, or function, but affects alone the contract rights of a particular stockholder, as against the other members of the corporation. The shares of stock which it is sought to disfranchise are the corporate property of the Union Pacific Railroad Company. The corporation itself is therefore an indispensable party to any suit which affects its corporate rights to own, hold, or vote such shares, for any decree made with reference to shares so owned must be effective to operate upon the owners. St. Louis Ry. Co. v. Wilson, 114 U. S. 60, 62 [5 Sup. Ct. 738, 29 L. Ed. 66]; Swan Land & Cattle Co. v. Frank, 148 U. S. 603, 610, 611 [13 Sup. Ct. 691, 37 L. Ed. 577]."

In City of Wheeling v. Mayor and City Council of Baltimore et al., 1 Hughes, 90, 95, Fed. Cas. No. 17,502, a controversy existed between the said city and other owners of the stock of the Baltimore & Ohio Railroad Company, and the mayor and city council of Baltimore also holders of said stock, the question being whether stock into which certificates of indebtedness issued by that company had been converted had a right to vote in the election of directors, and the city of Wheeling controverting such right and the mayor and city council of Baltimore insisting upon it. The railroad company filed no answer, and when the case came on to be heard the court held:

"And inasmuch as the facts of the case show that there are three classes of stockholders in the Baltimore & Ohio Railroad Company, whose interests in reference to this controversy are in conflict, there is wisdom in the course pursued by the president and directors of the company. They could not with propriety take sides with either class of stockholders. For this reason, if for none other, the private stockholders should be permitted to file a bill in their own name, to have this controversy between themselves and the other stockholders of the company finally decided, and to obtain such relief in the premises to which they may show themselves entitled."

Reaching the conclusion we do, that the holders of the common stock—one or more of such stockholders—should have been joined with the defendant below, and finding as we do that the decree complained of materially involves the interests of such shareholders, it follows, because of the well-established rule that no court can determine as to the rights of any party not before it, either actually or con-

structively, that the decree must be reversed. In the controversy raised by the complainants the company did not represent the common stockholders, and it is not in fact greatly concerned in it, nor essentially affected by the decree. That the stock was duly issued is not controverted; the insistence being not as to its issue or the legality thereof, but as to whether or not one class of the stockholders has a lien in preference to the other on the franchises and assets of the company.

We are unable to agree with the court below that the appellees did not ask for a decree in derogation of the interests of the common stockholders of the company. While it is true that by the bill the attempt is made to show that the corporation agreed soon after it was organized to execute an agreement guaranteeing certain rights to the purchasers of the preferred stock, which claim is sustained by the decree, surely it must be admitted that such adjudication in favor of complainants greatly increases the value of the preferred stock, and by so doing materially decreases the value of the common stock as it has been held since it was issued in the year 1894. Most undoubtedly if the corporation did, with the assent of all its stockholders, agree to make and record the agreement referred to, it should be required to do so; but, before such requirement is made, all parties interested in the matters pertaining to it, and especially those whose stock will likely be seriously affected by it, should by the principle of due process of law be made parties to the litigation by virtue of which such requirement is decreed.

The decree appealed from will be reversed, and the cause will be remanded, with permission to the appellees to make the common stockholders of the appellant—or some proper representatives of them—joint defendants with the defendant below, with the further direction that if the complainant below declines or neglects so to do that the bill be dismissed.

Reversed.

KELLER, District Judge (dissenting). I am strongly of the opinion that the decree of the Circuit Court should be affirmed.

It is beyond question, in my judgment, that all the proceedings under which the preferred stock in this case was issued contemplated that the holders thereof should have and possess a lien on the assets of the company. All of the proceedings recited in the record bear witness to this.

In the agreement entered into between the Bondholders' Committee of the Baltimore & Eastern Shore Railroad Company and Mr. John E. Searles, found on page 93 et seq. of the record, the first paragraph of the agreement proper is as follows:

"First. The party of the second part undertakes and agrees to purchase and acquire the properties of the Baltimore and Eastern Shore Railroad Company and the Choptank Steamboat Company and to consolidate the same with the properties of the Maryland Steamboat Company and the Eastern Shore Steamboat Company and for that purpose to organize a corporation under the laws of the state of Maryland to acquire and take over and operate all of said properties to be consolidated thereunder. The corporation so to be formed shall have $1,000,000 of common stock and shall have an issue

of $1,500,000 of cumulative five per cent. preferred stock and shall issue $1,-250,000 forty year five per cent. gold bonds secured by a mortgage of all its franchises and property, *the lien of which shall be arranged to be superior to that of the preferred stock.*" (Italics mine.)

It is to be observed that the agreement provided for the formation of a corporation under the laws of the state of Maryland, and that said corporation should have "an issue of $1,500,000 of cumulative five per cent. preferred stock." The certificate of incorporation of the Baltimore, Chesapeake & Atlantic Railway Company, organized in accordance with this agreement, is found on pages 18 and 19 of the record, and simply provides for a capital stock of $1,000,000.

This stock was issued to Nicholas P. Bond and associates in part payment for property valued at $2,500,000 sold to the company by said Bond and associates, and said Bond and associates offered to take for the balance due them "either $1,500,000 of the 5 per cent. mortgage bonds, at par, or an equal amount of a preferred stock entitled to a cumulative preference of 5 per cent. out of the profits of the corporation." (Record, p. 165.)

When this offer was made at the meeting of stockholders held on 3d of August, 1894, the following resolution was offered and unanimously adopted (Record, pp. 165, 166):

"Resolved that having considered the proposition made by Nicholas P. Bond to receive in full payment of the balance due, either one million, five hundred thousand dollars in five per cent. bonds of this company at par, or one million five hundred thousand dollars in five per cent. cumulative preferred stock at par; and being advised that this company has power to make and issue bonds in such amount or amounts as it may deem expedient, and that it has power to issue preferred stock in place of issuing the said bonds,

"Resolved that this company do issue to Nicholas P. Bond in full payment of purchase money due him, one million five hundred thousand dollars of cumulative five per cent. preferred stock, and that certificates therefor be drawn in such form as shall be approved by counsel of this company and accepted by the board of directors."

That the stock thus provided for was intended to be issued and was issued under the provisions of existing law, and was understood to have and did have a lien upon the property of the corporation, I think is abundantly shown by the facts: First, that at a meeting of the stockholders held on the following day (September 1, 1894) it was thought necessary to get the unanimous consent of the holders of every share of preferred stock, to the execution and delivery of "the mortgage submitted to us, with the full understanding that the same is and shall be a first lien on all the property of the Baltimore, Chesapeake & Atlantic Railway Company now held by it or hereafter to be acquired"; and, second, that it was thought necessary to get like unanimous consent to the following resolution:

"Resolved (2) that we do agree that in each certificate of preferred stock now or hereafter issued there shall be stamped or inserted substantially the following words: 'This stock is subject only to the prior lien of a mortgage dated this first day of September, 1894, executed to secure twelve hundred and fifty, one thousand dollar, first mortgage five per cent. gold bonds, and the renewals and extensions thereof.'"

What do these provisions mean if they do not mean that the agreement made by the common stockholders contemplated that this pre-

ferred stock should have the lien provided for by the statute? If it did not have a lien, no unanimous consent was necessary for the issuance of the mortgage bonds; nor was there any propriety or purpose in inserting in the certificates that "this stock is subject only to the prior lien" of said mortgage. If the stock was not to have a lien, why use the expression "prior lein"?

These questions invite an examination of the statute of Maryland in force at the time, applicable to the issue of preferred stock "in place of bonds" by a company all of whose authorized capital stock was then issued and outstanding.

This stock was issued under the provisions of section 408 of article 23 of the Maryland Code. This must be true because, having all of its authorized capital stock already issued and outstanding, it was only by virtue of that provision that the company had any authority to issue additional stock of any description, and the stock so issued had to be of the description mentioned in that section. One of the attributes of the stock therein provided for is that:

"The said preferred stock shall be and constitute a lien on the franchises and property of such corporation, and have priority over any subsequently created mortgage or other incumbrance."

In the light of this provision, and in view of the fact that this stock was authorized on August 31, 1894, the necessity for the agreement of September 1, 1894, by these stockholders to subordinate their lien to that of the $1,250,000 mortgage of that date, becomes readily understood. But for that agreement the lien of the stock would have had priority over that of the mortgage as to any one with notice.

And here we come to the only purpose and use of the provision in the Maryland statute for the execution, acknowledgment, and recordation of the corporate agreement under seal therein provided for. As against the corporation and all its common stockholders the agreement and the issue of the stock affords all the remedy needed; but as against subsequent lien creditors this provision of the law is important to be carried out, and that was the purpose of this bill.

That the failure to acknowledge and record the agreement provided for in the Maryland law was either the result of an oversight or of barefaced treachery will not admit of a doubt. That stock carrying a lien only inferior to that of the $1,250,000 of first mortgage bonds was the consideration for which the company was to receive, and did receive, the property of the Baltimore & Eastern Shore Railroad Company and the Choptank Steamboat Company, valued at $2,500,000, is shown by the original agreement for the consolidation (page 94, Record), as well as by the actual steps taken thereafter by the company when organized.

If I am correct in my strong conviction that all the evidence in the case shows that the contract for the issue of this preferred stock contemplated stock clothed with all the attributes of the Maryland statutory preferred stock, then I cannot see how the presence in this suit of any common stockholders is either necessary, or indeed even proper. The action of the company in whatever it did agree to do was corporate action, assented to by the holder of every corporate

share of its common stock, and every such stockholder and the subsequent transferee of every such holder is bound by what was then lawfully agreed to.   Indeed, the authorities go much further than this. See the discussion in Clark & Marshall on Private Corporations, §§ 563, 569, 570, and cases there cited.

The fact is that this statutory so-called preferred stock is entirely governed by the statute, and the holders of it occupy, in some aspects, the relation ·of creditors of the corporation.

In the case of Heller v. Marine Bank, 89 Md. 602, 43 Atl. 800, 45 L. R. A. 438, 73 Am. St. Rep. 212, Chief Judge McSherry, discussing the changes introduced by the amendment of 1880 (Acts 1880, c. 474), declares that the new law had radically changed what had formerly been described as "preferred stock" under the statute of 1868 (Acts 1868, c. 471), and had clothed it with different attributes.  He says:

"Preferred stock, under the act of 1868, had no lien whatever; this statutory preferred stock under the act of 1880, 'the said preferred stock,' has a lien on the franchises and property; preferred stock under the act of 1868 had no priority over creditors; this statutory preferred stock, under the act of 1880, has priority over subsequent mortgages and incumbrances."

See section 417 C, Clark & Marshall on Private Corporations, in which this statute is discussed as well as the case of Heller v. Marine Bank.  The authors conclude:

"Such stock is not ordinary preferred stock, nor, technically, is it preferred stock at all, and, therefore, it is not governed by the ordinary rules.  It is sui generis, and the rights of the holders are determined by the statute."

On this branch of the subject I cannot do better than to quote from the opinion of the learned judge of the Circuit Court:

"The stockholders are constructively here when the corporation is here in court.  It is not attempted to have the court decree in derogation of their rights, but it is attempted to decree that the corporation did agree and was bound at the inception of its existence to execute an agreement under seal and duly acknowledged guaranteeing certain rights to purchasers of or subscribers to such preferred stock.  Statutory preferred stockholders are entitled to this muniment of title because, under the Maryland statute, it is made the duty of every corporation issuing preferred stock under the provisions of the statute to execute it, and the failure of a corporation to furnish it is a failure of the corporation to do what the law enacts it shall do.

"There may be issues of preferred stock to which this provision of this law is not applicable.  But that is in derogation of rights given by the statute, and it must be made to appear that such was the agreement of the parties; but in this case, on the contrary, all the evidence tends to show that in the inception of this corporation it was the intention and design of the parties who promoted it that they should buy the property and should pay for it by the issue of mortgage bonds or preferred stock and by the issue of common stock, so that it was part of the original intention of the parties promoting the organization of this company that this preferred stock in lieu of so much of mortgage bonds should issue, and it was to be issued in conformity with the law given by section 408 of article 23."