LURTON, Circuit Judge.
This cause is now heard upon motion of the complainants for an interlocutory injunction to restrain the voting at a stockholders’ meeting for the election of directors of 900,000 shares of Southern Pacific stock alleged to be owned by the Union Pacific Railroad Company. The complainants also move for an interlocutory injunction to restrain the. Southern Pacific Company from making any sale or other disposition of Central Pacific shares owned by the Southern Pacific Company, or of a lease of said Central Pacific Railroad held by the Southern Pacific. The. complainants *149 are minority stockholders in the Southern Pacific Company, and filed the bill in behalf of themselves and all other stockholders who may choose to join with them as complainants. The defendants named as such are the Southern Pacific Company, a corporation organized under the laws of Kentucky, and the Union Pacific Railroad Company, a corporation of the state of Utah. The bill has been properly filed in the district of the residence of the Southern Pacific Company, and that corporation has appeared and answered. The Union Pacific Railroad Company has not been found in the Western District of Kentucky, and a return to that effect has been made. Neither has it voluntarily appeared.
The ground upon which an injunction is sought is, first, that the Southern Pacific and the Union Pacific are both transcontinental railroad companies, owning or controlling parallel and competing railroads, and active competitors for a large proportion of the through Pacific Coast business; second, that the Southern Pacific has fallen under the control and domination of the Union Pacific through the voting power of 900,000 shares of Southern Pacific stock acquired and held by the latter corporation for the purpose of dominating the operations of the former.
It is averred that a majority of the directors of the defendant company consist of members of the board of directors of the Union Pacific Company, and that all of the principal executive offices of the two companies are held by the same persons, and that the business of the two companies has been and is being manipulated to the advantage of the dominant company, and the injury and disadvantage of complainants as stockholders of the servient corporation. The bill avers that the Southern Pacific Company owns all of the stock of the Central Pacific Railroad Company, as well as a lease upon the line of railroad owned by the latter company; that the line of the Union Pacific proper begins at Omaha and ends at Ogden; that the Central Pacific begins at Ogden and ends at San Francisco; and that the bulk of the terminal facilities at San Francisco used by the Southern Pacific Company are owned by the Central Pacific Company. It is also charged that the Union Pacific purposes to acquire from the Southern Pacific the stock of the Central Pacific, as well as the lease held by the former upon the railroad of the latter, and that this scheme, if carried out, will be an irreparable injury to the stockholders of the Southern Pacific Company; that, with this purpose in view, the Union Pacific Company, through the. control of the board of directors of the Southern Pacific. Company, is expending vast sums of money in grossly extravagant improvements upon the Central Pacific Railroad, to the end that when this railroad is acquired it will constitute, in connection with the line from Omaha to Ogden, a shorter and better line than any other transcontinental line, and an effectual competitor with the Southern Pacific proper for competitive transcontinental business; that, to carry on thes.e betterments, the earnings of the Southern Pacific proper have been-used to so great an extent as to create a deficit between income and expenditure.
The answer of the Southern Pacific Company, in substance, denies *150 that the Southern Pacific and Union Pacific are, in fact or law, either parallel or competitive lines of railroad, and avers that in fact they are continuous and noncompetitive, having no common Eastern points or Eastern connections, and that their respective Eastern connections are more than 1,000 miles apart, and that there is no intervening point at which their lines are in contact or in competition. The answer does not deny the ownership of 900,000 shares of its stock by the Union Pacific Railroad Company, but does deny that that constitutes a majority of its stock, which consists of 1,970,000 shares. The answer also “denies that the purchase of any stock of the defendant by the Union Pacific Railroad Company, or its acquisition or any holding thereof, is illegal,” and alleges that the general laws of the state of Utah, under which the Union Pacific Railroad Company was organized and exists, “expressly authorize any railroad company of the state of Utah to acquire all or any part of the stock of any other corporation, when such railroad company is situated with respect to said other corporation as is the Union Pacific Railroad Company with respect to defendant.” It admits that its board of directors includes a majority of persons who, when elected, were directors of the Union Pácific Railroad Company, and are still directors of both companies, but avers that these persons, together with the other members of the board, were elected by the unanimous vote of all the stockholders present or represented, including the complainants themselves, who were then present. It is admitted that the two companies “do harmoniously operate and carry on their business as common carriers in close connection and affiliation with each other, and that the traffic, passenger, and auditing departments of the said two companies were separately placed under the supervision of the same general officers.” “It denies that said departments, or any of them, are or have been consolidated in any manner whatever,” and avers that separate accounts have been kept, and denies that the business of the defendant company has been “placed in the hands of agents of the Union Pacific Railroad Company,” and avers that each company has “a separate corps of traffic, passenger, and auditing department officials and assistants.” It denies that, by the appointment of the same person as traffic manager for each company, the interests of the Southern Pacific were injured, and avers that its interests were thereby protected and its business enlarged. It denies all charges that its business has been diverted or disadvantageous rates made, and avers that the existing arrangement promotes “the traffic and financial and every other interest of this defendant.” The answer denies that there has. been any “illegal or other unification of its traffic business with the Union Pacific Railroad Company, or any unlawful control of this defendant by the Union Pacific Railroad Company,” or that “any lawful competition has been destroyed or in any manner unlawfully interfered with to the prejudice of this defendant.” While denying any such large expenditures made or contemplated upon the Central Pacific Railroad as charged, the answer admits that improvements of great importance are being made thereon, and justifies these expenditures as right in policy, and for the plain ultimate interest of the stockholders of the Southern Pacific *151 Company. It denies that the Union Pacific Company “intends or desires ultimately or ever to sever and separate the Central Pacific Railroad from the ownership of the Southern Pacific Company, or to obtain or acquire the said Central Pacific Railroad for the sole and exclusive or other use of the said Union Pacific Railroad Company.” It denies that any such design has ever been formed or announced, or any scheme for improving the Central Pacific Railroad out of the earnings of either division or the Southern Pacific proper, or that it has • ever entertained any idea of absorbing the earnings with a view of depriving the stockholders of dividends, or with a view of acquiring said railroad when so improved. It denies that the defendant or its board of directors has ever received or considered any proposition or suggestion for the sale or lease of said Central Pacific, or the stock held therein, or in any part thereof, or the lease thereon, from the Union Pacific, or any other person or corporation. In general terms, it may be said that the answer avers that the properties of the Southern Pacific have been wisely managed, cared for, and operated exclusively in the interest of its own stockholders, and denies that the members of its board, who are also members of the Union Pacific board, especially represent the Union Pacific, or in any wise are disloyal to their trust as directors of the Southern Pacific.
Affidavits in support of both bill and answer have been filed and considered, so far as relevant to the questions arising upon the present motion.
i. Upon the case stated, the first and dominating question to be decided is as to whether the Union Pacific Railroad Company is an indispensable party, without which no decree can be made in respect of its right to vote the shares of Southern Pacific stock at the approaching stockholders’ meeting for the election of directors of the Southern Pacific Company. Unless otherwise provided by the organic law of the corporation, the right of a stockholder to vote upon his stock at all meetings of shareholders is a right inherent in the ownership of the shares, and as such a property right. If the right of the 900,000 shares beneficially owned by the Union Pacific Railroad Company to vote be denied, it must be either upon the ground that the shares have been illegally issued, or that that company is incapable, in law, of holding such shares, or that some public policy will be offended if it shall be suffered to exercise the ordinary incident of such ownership by voting them in stockholders’ meetings, or that the property rights of the minority are to be thereby so seriously put in jeopardy as to justify a court of equity in practically turning the owner and holder of such shares out of the control and management of the defendant corporation, and placing in control the minority in shareholding interest. To justify such a result, I would have to hold and adjudge either that the Union Pacific, Railroad Company was incapable of legally acquiring and holding shares in the Southern Pacific Company, or that, if competent to own and hold such shares, it ought not to be suffered to exercise the right of participating in the election of a board of directors, if such participation may result in placing the Union Pacific Company in a position where it will be capable of controlling and dominating the management of *152 the defendant company. Such a conclusion would'involve an inquiry and determination of the competitive relations of these companies to each other, in order that they might be brought within the sweep of the legal principles which forbid the unification of such properties, or I should have to find that one or both companies were subject to some positive statutory disability which would forbid the one to hold the stock of the other, or any unification of operation through stock ownership, traffic, or “community of interest” agreement, which would substantially eliminate the motive for competition. In default of some statute operating upon one or both of these companies, or of satisfactory evidence of such competitive relation as would, from considerations of public policy, deny to one the right to dominate the other through stock ownership or other scheme of combination, I would be driven to find, as a matter of general law, that minority shareholders might restrain a majority shareholder from voting for directors at all, upon a showing that the result would probably be the selection of trustees who would not manage the corporation in the interest of its own shareholders, but in an interest which was repugnant to them as a class. The direct effect of any such decree, upon any of the theories upon which I am asked to act, would be to deprive the Union Pacific Railroad Company of one of the most valuable of the incidents of its ownership of its Southern Pacific shares^the right to vote for managing directors at a meeting of stockholders. It is, therefore, according to every definition, an indispensable party to any bill which challenges its right to own or vote upon its Southern Pacific shares. It must be accepted as altogether fundamental that no court can adjudicate upon the rights or interests of one who is neither actually nor constructively before the court. The principle of due process of law unconditionally compels observance of the rule which limits the just jurisdiction of every court to a determination only of the rights of persons who are parties to the litigation. N. O. Waterworks v. N. O., 164 U. S. 471, 480, 17 Sup. Ct. 161, 41 L. Ed. 518. In Mallow v. Hinde, 12 Wheat. 193, 198, 6 L. Ed. 599, where the court found itself unable to proceed for the want of an indispensable party, it was said:
“We do not put this ease upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to all courts of equity, whatever be their structure, as to jurisdiction. We put it on the ground that no court can adjudicate directly upon a person’s right without the party being actually or constructively before the court.”
This doctrine has over and over again been announced by the Supreme Court, and in no casé more emphatically than in Minnesota v. Northern Securities Co., 184 U. S. 199, 237, 22 Sup. Ct. 308, 46 L. Ed. 499.
But complainants say that the Union Pacific is constructively before the court, being represented by the So'uthern Pacific Company. This contention is placed upon two> distinct grounds: First, that there is such an identity of interest between the two corporations that the defendant should be regarded as representing and defending for the Union Pacific Company; second, that the Southern Pacific Com *153 pany is, in law, the representative of each of its stockholders in respect to all corporate matters. These in their order.
The “identity of interest” relied upon to obviate the necessity of suing the Union Pacific consists in the circumstances heretofore stated, showing the control exercised by the one company in the management of the other. But it must not be overlooked that the managing agencies which have spoken through the answer of the Southern Pacific deny that they are or have been disloyal to their trust as officers and directors of the Southern Pacific Company, and deny that, in their character as officers of the Southern Pacific Company, they stand for and represent the other company. They deny that the two roads were in any sense competitive, or that there is the slightest repugnancy in their acting as directors for both companies. To assume that there is such identity of interest as to dispense with the necessity of bringing the Union Pacific Railroad Company before the court would be to first decide all the issues of fact and law involved, and then say, “These being the facts, and this the law, it is plain that there is such oneness of interest between these companies that the rights of the Union Pacific Railroad Company can be adjudicated without its actual presence, because it is represented by the defendant which is sued.” Aside from this inconsistent attitude, we cannot ignore the fact that, while there may be an identity of interest in some particulars, the question of the right of the Union Pacific Railroad Company to hold and vote the shares owned by it is a question which deeply affects its property rights, and in respect of which the Southern Pacific Company, as such, has no interest whatever. These are two wholly distinct corporations, having each its own properties and its own body of stockholders, and neither has any legal right to stand for or represent the other, except as it may be duly constituted the agent of the other.
The second ground for maintaining that the Union Pacific Railroad Company is a party by representation is based upon the very obvious rule that the corporation represents its shareholders in the defense of all suits which involve corporate rights or functions. But this principle only applies where the matter litigated is a corporate matter, as distinct -from a right which pertains only to one in his character as the owner and holder of particular shares. What right has the Southern Pacific Company to conclude or affect the right of any shareholder in respect of the ownership or incidents of his particular share's? Of what interest is it to the corporation, considered as an entity or as a body of stockholders, whether particular shares are owned or voted by A., rather than B., or whether C. is capable of holding or voting shares at all ? It is a question which may indirectly affect other shareholders, but it is clearly not a question which concerns the corporation, as such, or any of its functions. But it has been urged that the idea of a corporation as a legal entity separate and apart from the body ■ of persons composing its stockholders is a fiction which should be ignored whenever used for purposes not within the intent of the device, and that in a case like this a suit against the corporation should be regarded as a suit against every corporator, and therefore a suit to which the Union Pacific *154 Railroad Company is a party by representation. If the issue made with the Union Pacific Railroad Company in its character as a stockholder of the Southern Pacific was one which was common to all the stockholders, there would be some room for regarding the litigation as involving a corporate matter, interest, or function. But the question made is one which does not apply to the stockholders as a body. Its solution depends absolutely upon a state of facts peculiar to the particular stockholder, and its decision will affect directly the property rights of that owner alone, and does not directly concern any other stockholder as such. A judgment or decree against a corporation in respect to corporate matters necessarily binds its members, in the absence of fraud, because, as stated by Fuller, C. J., in Hawkins v. Glenn, 131 U. S. 319, 332, 9 Sup. Ct. 739, 743, 33 L. Ed. 184, “this is involved in the contract created in becoming a stockholder.” No such reason exists when the judgment or decree against the corporation does not involve some corporate duty, obligation, or function, but affects alone the contract rights of a particular stockholder, as against the other members of the corporation. The shares of stock which it is sought to disfranchise are the corporate property of the Union Pacific Railroad Company. The corporation itself is therefore an indispensable party to any suit which affects its corporate right to own, hold, or vote such shares, for any decree made with reference to shares so owned must be effective to operate upon the owners. St. Louis Ry. Co. v. Wilson, 114 U. S. 60, 62, 5 Sup. Ct. 738, 29 L. Ed. 66; Swan Land & Cattle Co. v. Frank, 148 U. S. 603, 610, 611, 13 Sup. Ct. 691, 37 L. Ed. 577.
The suggestion has been made that the affidavits and exhibits show that the shares so owned by the Union Pacific Railroad Company stand in the name of E. H. Harriman, and that as he has made an affidavit, which has been filed in the case, he has thereby made an appearance in the case in his representative character as trustee for the Union Pacific Company, and that, having as a party the trustee in whose name such shares stand, the court has obtained jurisdiction to enjoin the trustee from voting on same, even if his appearance is not to be regarded as the appearance of the Union Pacific for all purposes relating to said shares. The premise is absolutely unsound. Mr. Harriman has filed an affidavit apparently and presumably at the instance of the Southern Pacific, which is a party; and it cannot be that, without being even named as a party, a mere witness who is called upon to testify becomes thereby a party, even though his evidence may operate indirectly to his own advantage personally or as a trustee for others. Knowledge of the pendency of a suit is not equivalent to legal notice, and the mere appearance of one as a witness in behalf of one who is an actual party is not an appearance as a party, and has never been so held.
With some reluctance, I reach the conclusion that any decree or order affecting the right of the Union Pacific to acquire, hold, or vote the stock of the Southern Pacific Company owned by it, or denying to it the right to- vote its shares for such persons as it shall deem fit and proper, will not conclude that corporation, nor protect the Southern Pacific Company in excluding such shares from participation in *155 any stockholders’ meeting. This conclusion finds a precise precedent in the case of Hollifield v. Wrightsville & Tenille Railroad Co., 99 Ga. 365, 27 South. 715, though, if there’ had been no such precedent, my conclusion, upon principle, would have been the same. The case of Minnesota v. Northern Securities Co., 184 U. S. 199, 22 Sup. Ct. 308, 46 L. Ed. 499, has also an important bearing upon the subject. For this reason, and without expressing any opinion as to the power of a court of equity to interfere with the privilege of a stockholder to vote his shares as he may please, and for whom he pleases, if he be lawfully competent to own and hold the shares at all, or any opinion upon any of the other most interesting questions which arise properly only in a cause to which the Union Pacific is a party, I must decline to grant any injunction restraining the voting of the Union Pacific shares at the approaching election for directors.
The application to retain the cause for a reasonable time, in order that the Union Pacific Railroad Company may be impleaded in a forum having jurisdiction over it to try the question of its right to hold and vote the shares in question, and to- continue the stay order heretofore granted until such a litigation may be started and brought to a conclusion, must be denied. The action of the court in Mallow v. Hinde, 12 Wheat. 193, 6 L. Ed. 599, is cited as a precedent justifying such a practice. But in that case the court merely preserved an existing status by staying the enforcement of judgments at law to await the result of a suit in equity within a jurisdiction before which all the parties in interest could be brought. To continue the stay order heretofore granted for the purposes desired would be, in effect, to dispose of this litigation, for, if the Union Pacific Railroad Company be denied the right to vote its shares at the election to be held under the company’s by-laws, it would be to turn that company out of its control, and place the minority shareholders in, and thus accomplish the end sought by this proceeding, without jurisdiction over the principal party thereby affected.
2. There remains the question as to whether I shall not grant an injunction to prevent the defendant from disposing of the shares of the Central Pacific owned by it, or of the lease of the Central Pacific Railroad to the Union Pacific Railroad, or any one acting for it and in its interest. It would be difficult to find a more flagrant instance of repugnant trusteeship than' would be exhibited if the persons in the board of the Southern Pacific Company who are also directors of the Union Pacific Railroad Company should by their votes discharge the double function of buying for the one company and selling for the other. The design or purpose to dispose of the Central Pacific stock in whole or in part, or of the Central Pacific lease, has been most positively repudiated by the defendant corporation; and there has been produced no evidence whatever in support of the charge of such a purpose made by the bill, other than the fact that very large expenditures are being made upon the Central Pacific line. But unless it could be shown that these expenditures were either ultra vires or in pursuance of some fraudulent scheme, in disregard of the interests of the defendant company, they would afford no ground for an appeal to the powers of a court of equity. Such matters lie *156 in the discretion of the managing directors, and it is the fundamental law of corporations that the discretion of those having the power to act will not be restrained upon the application of a minority who may entertain a different opinion as to the wisdom of the expenditure. In view of the denials of the answer that these expenditures are being made with any ulterior purpose, I am unable to see any such exigency as to require the issuance of any preliminary injunction as to this matter.
The complainants may at any time hereafter make another application, upon obtaining evidence of a purpose to deal with the Central Pacific stock or lease as they profess to apprehend.