## BERNHEIM v. LOUISVILLE PROPERTY CO. et al.

### (District Court, W. D. Kentucky. November 11, 1914.)

1. REMOVAL OF CAUSES ⇐25—TEST OF RIGHT TO REMOVE.

   The case as made by plaintiff's petition, as it stood at the time of the petition for removal, was the test of the right to remove, and an amended petition, subsequently filed, could not be considered on a motion to remand.

   [Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 58, 59; Dec. Dig. ⇐25.]

2. CORPORATIONS ⇐197—STOCKHOLDERS' MEETINGS—RIGHT TO VOTE.

   The holders of shares of stock in a corporation, who appear to be such on the stockbooks at the date of a meeting of the stockholders, are prima facie entitled to vote the stock.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 747, 749–763, 764; Dec. Dig. ⇐197.]

3. REMOVAL OF CAUSES ⇐48—SEPARABLE CONTROVERSY.

   The petition in a suit by a stockholder in a property company alleged that a majority of the stock was owned by the L. Railroad Company or its officers and directors, or by the A. Railroad Company, which controlled the L. Company; that the stock owned by the A. Company appeared on the books of the property company in the name of a trust company, the A. Company and the trust company being foreign corporations; that the trust company, by voting such stock, had repeatedly elected the officers and directors of the L. Company as directors of the property company, and would do so at a meeting to be held on March 17, 1914; that under the Constitution and laws of Kentucky and the charters of such railroad companies it was unlawful for them to control the business of the property company; and that the stock appearing on the corporate books in the name of the L. Company belonged to other parties, but had not been transferred to them on such books. An injunction was asked restraining the L. Company from voting any stock at the meeting on March 17th, restraining the president of the property company from ruling at such meeting that the stock held by any of the other companies might be voted, restraining the secretary from registering the vote of such stock, restraining the holder of a proxy from such companies from acting as proxy or voting such stock, restraining the property company from recognizing the ownership of the stock held by the other companies, so far as the right to vote it at such meeting was concerned, and restraining the trust company and the A. Company from voting their stock. The date of such meeting had long since passed when a motion to remand was made, and

there was no claim that there had been any adjournment. *Held,* that a controversy was involved between plaintiff on the one side and the A. Company and the trust company on the other, involving the right of such companies to own, hold, or vote the stock of the A. Company held by the trust company as trustee, which controversy was entirely separable from the controversies with the other parties, and removable to the federal court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 93, 94; Dec. Dig. ⊜48.]

In Equity. Suit by I. W. Bernheim against the Louisville Property Company and others. On motion to remand to the state court. Motion overruled.

C. B. Blakey, of Louisville, Ky., for plaintiff.

Helm Bruce and Henry L. Stone, both of Louisville, Ky., for defendants.

EVANS, District Judge. On February 26, 1914, plaintiff, whom the record shows to have been then a citizen of Kentucky, sued the defendants, all then citizens of that state, in the Jefferson circuit court, alleging in his petition that he was the owner of more than 100 shares of the stock of the Louisville Property Company, which will be called the Property Company; that the Louisville & Nashville Railroad Company (which we shall call the Railroad Company) is a Kentucky corporation; that Milton H. Smith is its president; that J. H. Ellis is the secretary alike of the Railroad Company and the Property Company; that the Property Company was organized under the laws of Kentucky on March 31, 1898, and authorized to engage in the business of "purchasing, holding, leasing, selling, conveying, and otherwise using, managing, and disposing of all kinds of property, whether real or mixed, wherever situated in the United States of America"; that the capital stock of the Property Company is $600,000, divided into 6,000 shares of $100 each, all of which, with the exception of 238 shares, has been issued; that since the organization of the Property Company a majority of its stock has been owned by the Railroad Company, or by its officers and directors, or by the Atlantic Coast Line Railroad Company (hereinafter referred to as the Coast Line Company), which latter company controls the Railroad Company through ownership of the majority of the capital stock of the Railroad Company and through directors of the Railroad Company elected by the Coast Line Company; that the Property Company owns property valued at several millions of dollars; that none of that property is needed by it in its business; that all of that property originally belonged to the Railroad Company, or was purchased by the Property Company at the instance and request of the Railroad Company, and all of it is now, and has for the past 15 years been, held by the Property Company at the request and for the benefit of the Railroad Company; that the officers and directors of the Property Company are all officers and directors or employés of the Railroad Company; that plaintiff has requested and demanded of the officers and directors of the Property Company that they forthwith proceed

to sell and dispose of the assets of the Property Company and distribute the proceeds among those entitled thereto, but that the officers and directors of the Property Company have refused and failed to do so; that it is the purpose of the officers and directors of the Property Company to continue to hold, control, and manage the property and assets of that company in the interest of the Railroad Company; that the Coast Line Company owns 3,045 shares of the stock of the Property Company; that this stock, however, appears on the books of the Property Company in the name of the New York Trust Company, formerly New York Security & Trust Company, trustee (hereinafter referred to as the Trust Company), in a collateral trust indenture dated November 1, 1902, made by the Coast Line Company and subject to the terms of said indenture; that under the trust agreement the Trust Company, as trustee, has voted the 3,045 shares of stock belonging to the Coast Line Company at all the annual stockholders' meetings of the Property Company held since November 1, 1902, and that at all of said annual meetings by means of said stock it has elected the officers and directors of the Railroad Company as the directors of the Property Company.

Plaintiff further alleges that the next annual stockholders' meeting of the Property Company, which will elect directors, will be held on March 17, 1914, and that at said election the Trust Company, as trustee, will vote said 3,045 shares of stock, and will again elect the officers and directors of the Railroad Company as directors of the Property Company. Plaintiff also states that under the Constitution of Kentucky, and laws enacted pursuant thereto, no railroad company is permitted in any manner to control, manage, or operate the business of any other corporation, or any business other than that of operating a railroad; that by the terms of the respective charters of the Railroad Company and the Coast Line Company said companies are forbidden to control or manage any such business as that of the Property Company; that by virtue of the stock ownership on the part of the Coast Line Company that company and the Railroad Company have heretofore elected, and that at the meeting to be held on March 17, 1914, they will elect, the directors of the Property Company, and will thereby actually control the business of the Property Company.

Plaintiff avers that the Property Company is not a proper business to be conducted, controlled, or managed, either by or on behalf of either the Railroad Company or the Coast Line Company, and that the ownership of stock of the Property Company by or on behalf of either the Railroad Company or the Coast Line Company is beyond the corporate powers of either of said companies. Plaintiff also alleges that the Coast Line Company is a corporation organized under the laws of some state other than Kentucky, and so is the Trust Company, and that neither of them has an agent in Kentucky upon whom process can be served. Plaintiff then avers that he is informed and believes, and charges it to be true, that the proxy and proxies to vote the stock held by the Trust Company, as trustee, is and are held in the name of defendant W. L. Mapother, who is the first vice president of the Railroad Company; that said Mapother, Milton H. Smith, and J. H. Ellis are all residents of Kentucky; that unless enjoined

and restrained Milton H. Smith will preside at the meeting of stockholders of the Property Company, and will permit Mapother to vote as proxy the stock of the Trust Company, as trustee, and that J. H. Ellis, as secretary, will record the vote.

It is also alleged in the petition that there appears of record on the stockbooks of the Property Company stock in the name of the Railroad Company to the extent of 238 shares, but that the same is not owned beneficially or at all by the Railroad Company, but that the latter company so appears because the actual owners thereof, whose rights are represented by so-called scrip issued to said owners, "same being a large number of individuals and corporations other than the Louisville & Nashville Railroad Company, have not yet presented their said scrip and secured in exchange therefor the equivalent number of shares in the Louisville Property Company, but that scrip for the full amount of said 238 shares has been issued to individuals and corporations other than the Louisville and · Nashville Railroad Company."

Plaintiff then insists, upon the facts stated, that unless the holders of the stock held in the name of the Trust Company and the Railroad Company are prevented either in person or by proxy from voting said stock at said annual election to be held on March 17, 1914, a great and irreparable injury will be done him and other individual stockholders, in that the control of the Property Company through the election of directors at said meeting by the voting of said stock will be in the hands of the Coast Line Company and the Railroad Company, and managed by them in a manner injurious to the other stockholders, and that plaintiff, having no remedy at law, applies for an injunction.

The prayers of the petition are: (1) That the Railroad Company be prevented from voting for directors any stock of the Property Company, which may be held by the Railroad Company at the stockholders' meeting of the Property Company to be held on March 17, 1914, or any adjournment thereof; (2) that Milton H. Smith, as chairman of the stockholders' meeting, or as president of the Property Company, be enjoined from ruling that said stock or any stock of the Property Company held in the name of the Trust Company, as trustee for the Coast Line Company, may be voted for directors at said meeting; (3) that W. L. Mapother and all other persons acting as proxy for the Railroad Company or the Trust Company, as trustee, be enjoined from voting for directors at said meeting, either the stock held by the said Trust Company or by the Railroad Company; (4) that J. H. Ellis, as secretary of the Property Company and of the stockholders' meeting, be enjoined from registering the vote for directors of the stock held in the name of the Trust Company, trustee, or the stock held in the name of the Railroad Company; (5) that the Property Company be enjoined from recognizing in any way the ownership of the stock held in the name of the Trust Company, trustee, and the Railroad Company, so far as said ownership involved the right to vote said stock for the election of directors or for any other purpose at said meeting of March 17, 1914; and (6) if necessary, that the defendants be enjoined from holding said stockholders' meeting on March 17, 1914, and until the

questions involved herein be determined by the court; also plaintiff asks for costs and for all equitable relief.

On March 6, 1914, the defendants filed a special demurrer, in which they alleged and insisted that the Trust Company and the Coast Line Company were indispensable parties defendants. Thereafter, but on the same day, the plaintiff filed an amended petition, making the Coast Line Company and the Trust Company parties defendant, and averring that the Coast Line Company is the ultimate and real owner of the stock held by the Trust Company, as trustee, under the indenture described in the petition, and dated November 1, 1902, and thereupon prayed that both the Coast Line Company and the Trust Company be enjoined from voting the stock at the stockholders' meeting of the Property Company to be held March 17, 1914, or any adjournment thereof. Afterwards the Coast Line Company and the Trust Company removed the case to this court, and the plaintiff has moved the court to remand the case to the state court.

[1] After the filing of the petition for the removal of the action to this court, the plaintiff filed in the state court a second amended petition; but that phase of the case may be disregarded, upon the authority of many cases, besides that of Graves v. Corbin, 132 U. S. at page 585, 10 Sup. Ct. at page 200, 33 L. Ed. 462, where it was said that "the case as made by the bill and as it stood at the time of the petition for removal, is the test of the right to removal." See, also, Barney v. Latham, 103 U. S. at page 216, 26 L. Ed. 514. This fundamental rule must be applied here, but nevertheless it may emphasize what we shall say as to indispensable parties to recognize the fact, so far as the defendants Milton H. Smith, W. L. Mapother, and J. H. Ellis are concerned, that nothing remains in the case except moot questions, a proposition equally true so far as may be involved the Railroad Company's right to vote the 238 shares of the Property Company's stock, against which scrip is outstanding in the name of other persons. The moot character of these questions would seem clearly to appear from the following facts:

Most, if not all, of the relief sought by the plaintiff is the prevention of certain steps which he apprehends will be taken at the annual meeting of the Property Company's stockholders to be held on the 17th day of March, 1914, and at possible adjournments thereof. That day has long since passed, and there is no claim or suggestion of any adjournment to any other date of that meeting. Presumably, therefore, it was held, and adjourned finally after transacting its business; the suit as to these matters probably then becoming functus officio. This passing of the emergent date necessarily "wiped out the basis" (Fisher v. Baker, 203 U. S. 181, 27 Sup. Ct. 135, 51 L. Ed. 142, 7 Ann. Cas. 1018) of any of the relief sought by plaintiff in his petition as amended against prospective action to be taken on that date, and, under the case just cited and many others, converted the claims to that relief into mere moot questions. In respect to those matters the defendants Smith, Mapother, and Ellis, and even the Railroad Company as to the 238 shares, were all acting as mere special agents for a special purpose at that particular meeting, and were not indispensable parties, any

more than agents usually are when their principals are sued. As to the Railroad Company, it may be further suggested that, so far as its voting the 238 shares of scrip stock is concerned, it does not appear that by the next meeting, annual or otherwise, this scrip stock will remain in the name of the Railroad Company on the Property Company's stock books.

[2] Besides, it is important to remember that all those "holders" of shares who appear to be such on the stockbooks of a corporation at the date of any meeting of its stockholders are prima facie entitled to vote the stock, and the petition may not state a cause of action in respect to these shares and the Railroad Company's right to vote them, for, when the plaintiff shows that they stood on the Property Company's books in the name of the Railroad Company, that company's right to vote them appeared clear up to that date, notwithstanding the other averments in respect thereto upon propositions thereafter to be litigated and determined. Kentucky Statutes, § 552. Presumably the Railroad Company holds those shares with the consent of the scrip holders, inasmuch as the latter do not exercise their right to have certificates issued to them. At all events, when the scrip holders are content, it probably does not lie in the mouth of the plaintiff to make complaint, when his right to vote his own stock is not in danger.

The twenty-fifth equity rule (198 Fed. xxv, 115 C. C. A. xxv), which has reference to the bill of complaint, among other things, provides that it shall contain "a statement of and prayer for any special relief pending the suit or on final hearing, which may be stated and sought in alternative forms." Whether relief to be given by the court must be confined to that thus asked does not appear from the rule, nor can we learn from the rule itself whether the scope of a plaintiff's action is to be determined by his prayers. The difficulty here is that while, as a basis for the relief actually prayed for, plaintiff makes averments to show that the entire connection of the Railroad Company and the Coast Line Company with the Property Company is illegal and void, still no sort of relief against that general situation is asked, and we think a fair interpretation of the plaintiff's prayers limits them to March 17, 1914, and to the action of the meeting to be held then, though whether so or not the result must be the same.

[3] It is altogether sure, we think, that plaintiff's petition, as amended before the petition for removal was filed, can be so divided into parts as to show several distinct causes of action by plaintiff against at least some of the defendants. We have no direct concern with that phase of the case, except to ascertain whether to any one controversy which arises between plaintiff, a citizen of Kentucky, and the Trust Company or the Coast Line Company, citizens of other states than Kentucky, there appears to be a defendant who is a citizen of Kentucky, and who is an indispensable party to that controversy, and without whose presence as a party the controversy cannot be finally determined. Unless in such a controversy a citizen of Kentucky is an indispensable party, that controversy, if separable from the others, is removable, and one or more of the defendants who are citizens of another state than Kentucky may remove the same. Judicial Code, § 28; Barney v. Latham, 103 U.

S. 212, 216, 26 L. Ed. 514, Geer v. Mathieson, 190 U. S. 428, 23 Sup. Ct. 807, 47 L. Ed. 1122.

The case being an interesting one, at the outset we stated very fully the facts as alleged by the plaintiff. A careful analysis of them in connection with the prayers for relief develops, clearly enough for present purposes, that plaintiff's claims probably may be separated into at least nine controversies, with several of which neither the Trust Company, as trustee, nor the Coast Line Company, has anything to do, and to which, therefore, neither of them is a necessary or indispensable party. The several controversies which plaintiff has with the various defendants may be stated as follows:

(1) One with the Railroad Company to prevent it from voting its stock in the Property Company at the annual stockholders' meeting of the latter company to be held on March 17, 1914. As it is not alleged that the Railroad Company now holds any of the stock, except 238 shares, which must be surrendered on the presentation of scrip outstanding against it, and as the meeting was to be held on March 17, 1914, which day has long since past, we think this controversy is of negligible importance.

(2) Another controversy is with W. L. Mapother, seeking to prevent his acting as agent or proxy for certain stockholders at that meeting.

(3) Another is with J. H. Ellis, seeking to prevent him, as secretary of the Property Company and of the annual meeting to be held on March 17, 1914, from registering the vote for directors of the stock of the Property Company held by the Railroad Company. As the date for the meeting is long past, and as these two controversies arise out of mere acts of agents for that occasion, we think they now have no importance. Non constat that either Mapother or Ellis will be authorized to act as such again at any future time.

(4) Another controversy plaintiff has with the Property Company is to prevent it from "recognizing" (whatever that may, in the legal sense, be) in any way the ownership by the Railroad Company of the stock in the Property Company, which the railroad holds in its own name, so far as said ownership involves the right to vote said stock for directors or for any other purpose at the meeting of March 17, 1914. What we have said respecting the other controversies already mentioned may apply also to this one. Inasmuch as a plaintiff is not allowed to blend controversies, in their nature separable, in such a manner as to prevent removal, we think, on the grounds stated, neither of the foregoing controversies, which are of a very incidental character, presents any obstacle to the removal of the action.

Other controversies also appear from the pleadings, viz.: (5) One wherein plaintiff prays that Milton H. Smith, as chairman of the stockholders' meeting and as president of the Property Company, be enjoined from ruling at the meeting on March 17, 1914, that stock in that company may be voted which is held by or in the name of the Trust Company, as trustee of the Coast Line Company; (6) another that W. L. Mapother, acting as proxy or agent of the Trust Company, be enjoined from voting for directors at the meeting of the stockholders of the Property Company to be held on March 17, 1914, stock

of that company held by the Trust Company. It in no way appears, that day being past, that either Smith or Mapother will ever act in their then capacities again, and the whole proceeding against them as individuals has become a vain thing.

(7) Another controversy is that with J. H. Ellis, wherein it is sought to enjoin him, as secretary of the Property Company and of its stockholders' meeting to be held on March 17, 1914, from registering the vote for directors of the stock of the Property Company held in the name of the Trust Company. What we have said as to the others applies here, and it will be particularly noted that the petition for removal does not relate to either one or any of these controversies.

(8) Some at least of these remarks apply to another controversy, which is between the plaintiff and the Property Company, whereby the plaintiff seeks to enjoin that company from "recognizing," at said meeting of its stockholders to be held on March 17, 1914, the ownership of the Trust Company of any stock of the Property Company held in the name of the Trust Company.

The ninth and last controversy in the case is between the plaintiff on one side and the Trust Company and the Coast Line Company on the other, and is set forth in the amended petition including the prayer thereof. The petition for removal, after stating the citizenship of the parties, describes the controversy sought to be removed in this language:

"There is a controversy in said cause, the matter of which exceeds, exclusive of interest and costs, the sum or value of three thousand ($3,000.00) dollars, and which is, and at the institution of this action was, wholly between citizens of different states, to wit, between plaintiff, I. W. Bernheim, a citizen of Kentucky, and these petitioners, the Atlantic Coast Line Railroad Company and the New York Trust Company, trustee, citizens of other states than Kentucky, and which controversy can be fully determined as between them. Said controversy is as to whether or not these petitioners, or either of them, has the right to own, hold, or vote, certain, to wit, thirty hundred and forty-five (3,045) shares, of the value of one hundred ($100.00) dollars each, of the capital stock of a certain corporation, to wit, the Louisville Property Company, in which corporation said plaintiff, Bernheim, is also a stockholder, and in which controversy the other defendants in said cause have no interest whatever."

We think this language, while not entirely explicit, is sufficient to indicate the controversy with reference to which the suit is sought to be removed. To it no one of the other defendants is an indispensable party, and it can be settled, as between plaintiff and the removing defendants, without the presence in the cause of any of the other defendants. Upon this proposition the case of Taylor v. Southern Pacific R. R. Co. (C. C.) 122 Fed. 149, wherein Judge Lurton delivered a most luminous opinion, is controlling.

It seems to me therefore necessarily to result that the suit is removable, because the last-described controversy is a separable one, which is wholly between citizens of different states.

The motion to remand must be overruled; and it will be so ordered.