## WALLACE v. MOTOR PRODUCTS CORPORATION et al.

Circuit Court of Appeals, Sixth Circuit.
April 6, 1928.

No. 4823.

1. Removal of causes ⟨⟩49(1)—Stockholder's suit against foreign corporations, directors, and certain stockholders, seeking to set aside reorganization, presented separable controversy as to corporation.

Stockholder's suit against foreign corporation and directors and certain stockholders thereof residing within state, seeking to cancel and set aside reorganization proceedings, and damages against individual defendants as result of unlawful acts of directors and stockholders and certain incidental injunctional relief, held to present, as between plaintiff and corporation, a separable controversy removable to federal court.

2. Judgment ⟨⟩206—Decrees in personam, where parties are before court and res beyond its jurisdiction, may be entered and enforced against person.

Where parties are before court and res is beyond jurisdiction, decrees in personam may be entered and obedience thereto enforced against persons, decree not operating upon the res.

3. Corporations ⟨⟩665(3)—Action to determine validity of corporate organization should not to be entertained by court of another state except for fraud in its creation.

Action to annul a corporate charter or determine validity of corporate organization having to do with internal affairs of corporation should not be entertained by court sitting in another state than that in which corporation is organized, except on definite showing of fraud in very creation of corporation itself.

4. Corporations ⟨⟩665(3)—Allegations in stockholder's suit to set aside reorganization of foreign corporation held not to show fraud justifying court of another state in passing on question (Stock Corporation Law N. Y. §§ 20, 22).

Allegations in stockholder's suit to set aside reorganization of foreign corporation pursuant to Stock Corporation Law N. Y. (Consol. Laws,

c. 59), §§ 20, 22, held insufficient to show such fraud in creation of corporation authorizing court of another state to pass on question as to whether reorganization should be dissolved.

Appeal from the District Court of the United States for the Eastern District of Michigan; Charles C. Simons, Judge.

Suit by Newell B. Wallace against the Motor Products Corporation and others removed from state court. Decree of dismissal (15 F.[2d] 211), and plaintiff appeals. Modified, and, as modified, affirmed.

Alfred Lucking, of Detroit, Mich. (Lucking, Hanlon, Lucking & Van Auken, of Detroit, Mich., on the brief), for appellant.

Leo M. Butzel and Sherwin A. Hill, both of Detroit, Mich. (Warren, Cady, Hill & Hamblen, of Detroit, Mich., and Hoyt A. Moore, of New York City, on the brief), for appellees.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. The Motor Products Corporation, which was organized in 1916, was reincorporated under the laws of New York in 1923, with an authorized capital stock of 130,010 shares of no par value, 67,500 shares of which were common stock and 62,510 preferred. The preferred stock was entitled to annual dividends of $4 a share, and could be redeemed at any time, upon thirty days' notice, at $50 a share and accrued dividends. No dividends could be paid on the common stock so long as any preferred stock remained outstanding. The right to elect directors was vested in the common stock alone, but, if there was default in the payment of dividends on the preferred stock for nine months, the right to elect a majority of the directors passed to the holders of the preferred stock. In all other matters both classes of stock had voting power, except in proceedings to increase the number of common shares, with respect to which voting power was vested in the holders of the common stock alone.

At the time of this reincorporation, the company issued $6,750,000 of 6 per cent. sinking fund debentures, payable in 1943. By January of 1926 it had purchased and retired $3,500,000 of these debentures and all but 30,614 shares of its preferred stock. There were then outstanding 65,203 shares of common stock. In the meantime plaintiff had acquired 970 shares of the common stock, which he still owns.

In January of 1926 a new corporation was formed under the laws of New York, with an authorized capital of 30,614 shares of preferred stock and 200,000 shares of common stock, both without par value. The new company acquired the name, assets, and good will of the 1923 corporation, paying for the preferred stock of that company an equal number of shares of preferred stock in the new company and for the common stock two shares of common stock in the new company for one share of the old. The preferred stock, which was redeemable at $60 a share and accrued dividends, was not given any voting power in the affairs of the corporation, but carried cumulative dividends of $5 a share per annum, to be paid in preference to dividends on the common stock. 19,594 shares of the common stock were set aside to be issued to the employees of the corporation at a price of not less than $30 a share, to be paid for upon such terms as the board of directors might deem proper, directors of the company who were also employees being eligible to acquire the stock. The charter of the 1923 corporation had provided for the issuing of 5,000 shares of common stock to employees of the corporation, but had provided that it could not be issued to an employee who was at the same time a director.

Appellant did not exchange his stock in the old company for stock in the new, but, on behalf of himself and all other holders of common stock (in the old corporation), brought this suit in the state court of Michigan against the new company, its directors, and certain of its stockholders residing in Michigan, to cancel and set aside the proceedings by which the new company was organized, and to restore the common stockholders of the old corporation to the position that they had occupied prior to the reincorporation. Injunctions restraining and enjoining the defendants from proceeding or taking any steps under the charter of the new corporation were asked. A temporary restraining order was issued in the state court, after which, on petition of the corporation, the suit was removed to the United States court on the ground that there was a separable controversy between the plaintiff and the corporation. Motion to remand to the state court was made and denied, and, on motion of the corporation, the restraining order issued in the state court was vacated and the bill dismissed.

The claim of the plaintiff is that the directors of the old company and the defendant stockholders, being personally interested in increasing the value of the preferred stock in that company to the detriment of the com-

mon stockholders, formed the new company so that they could repurchase at a reduced price the common stock in the old company which they had theretofore sold, and so that their preferred stock in the old company might be exchanged for an equal number of preferred shares in the new company of much greater value, and that, because of this interest of these individual defendants, and their lack of good faith in organizing the new company, the proceedings taken to effect its organization constituted a fraud upon the holders of the common stock of the old company.

[1] The question that was considered by the lower court on the motion to remand was whether there was such a separable controversy between the plaintiff, a citizen and resident of Michigan, and the corporation, a citizen of New York, as entitled the latter to remove the cause to the United States court. The bill prayed primarily "that the court, by its decree, cancel, rescind, and set aside all steps and proceedings of whatsoever name or nature that may have been taken to effect and consummate said plan of reorganization." As incidental relief it asked that the corporation and the individual defendants be restrained and enjoined: (1) From using the assets of the corporation to retire, redeem, or purchase any of its preferred stock at more than $50 a share; (2) from declaring or paying dividends on the preferred stock in excess of $4 a share per annum; (3) from declaring or paying any dividend on the common stock until all of the preferred stock had been retired; (4) from using the assets of the corporation for retiring, redeeming, and purchasing any of the outstanding 6 per cent. debentures; (5) from accepting any further stock for exchange or transfer under the reincorporation; (6) from taking further steps of any nature to effect or consummate the plan of reorganization; (7) from selling or disposing of any of the 19,594 shares of common stock set aside for sale to employees; and (8) that the court restore all the stockholders of the corporation (presumably the corporation of 1923) to the positions they occupied prior to the reincorporation. The relief sought against the individual defendants was that they be enjoined from selling or disposing of any of their stock in the Motors Product Corporation (presumably the 1926 corporation); that they account for all profits which they had realized from the reincorporation; that they be required to pay to plaintiff the damages that he had sustained because of their unlawful acts in creating it; and that their stock

25 F.(2d)—42

be subjected to the payment of any such damages awarded.

It was said in Geer v. Mathieson Alkali Works, 190 U. S. 428, 23 S. Ct. 807, 47 L. Ed. 1122, that a suit "may, consistently with the rules of pleading, embrace several distinct controversies. * * * And, when two or more causes of action are united in one suit, there can be a removal of the whole suit on the petition of one or more of the plaintiffs or defendants (now only the defendants) interested in the controversy, which if it had been sued on alone would be removable." The primary object of the suit before us was to cancel, rescind, and set aside the proceedings taken to organize the corporation of 1926. The bill sets up two causes of action—one against the new corporation to annul its charter and to enjoin certain acts which it alone could do and upon which it alone might have been sued; the other against the individual defendants for damages sustained as a result of their unlawful acts as directors and stockholders of the old corporation, and for certain incidental injunctional relief, for which they alone were responsible. These were separable actions. To such a suit the authorities[1] cited by appellant are not applicable. It is controlled, we think, by the principles announced in Geer v. Mathieson, supra, and Venner v. Southern Pacific Co. (2 C. C. A.) 279 F. 832, in which latter case Pollitz v. Wabash R. Co. (C. C. A.) 176 F. 333, relied upon by appellant, was distinguished from the facts there under consideration.

It is contended for appellant that the case presented in the bill is one in which there is a contest between classes of stockholders (the common stockholders on one hand and the preferred stockholders on the other), in which the corporation is presumptively indifferent, as in Taylor & Co. v. Southern Pacific Co. (C. C.) 122 F. 147, Weidenfeld v. Northern Pacific R. Co. (C. C. A.) 129 F.

---

[1] Among the authorities cited on this subject are Wilder et al. v. Virginia, etc., & Iron Co. et al. (C. C.) 46 F. 676; MacGinniss v. Copper & Silver Mining Co. (9 C. C. A.) 119 F. 96; Taylor & Co. v. Southern Pacific Co. (C. C.) 122 F. 147; Weidenfeld v. Northern Pacific Co. (8 C. C. A.) 129 F. 305; Pollitz v. Wabash R. Co. (2 C. C. A.) 176 F. 333; Baltimore C. & A. R. Co. v. Godeffroy (4 C. C. A.) 182 F. 525; Baillie v. Backus (D. C.) 230 F. 711; Smith v. Barnett (D. C.) 242 F. 83, in which Geer v. Mathieson was distinguished; Allen v. Hauss (D. C.) 290 F. 253; Central R. Co. of New Jersey v. Mills, 113 U. S. 249, 5 S. Ct. 456, 28 L. Ed. 949; and St. Louis & San Francisco R. Co. v. Wilson, 114 U. S. 60, 5 S. Ct. 738, 29 L. Ed. 66.

305, and Baltimore C. & A. R. Co. v. Godeffroy (C. C. A.) 182 F. 525. With this we cannot agree. Against the corporate defendant, the plaintiff sought an annulment of its charter, with incidental injunctional relief pending a hearing and decision of that main issue. This was an attack upon the existence of the corporation in which it was vitally interested, which it had to defend, and to which the stockholders and directors were in no sense necessary parties. It was clearly separable from the claim of damages against the individual defendants for acts which they did as directors and stockholders of the old corporation, in which the new corporation was not interested, and to which it could not be required to respond.

On the motion to dismiss a pertinent inquiry was whether the organization of the new company had been consummated. The bill shows that it was consummated January 28, 1926, by the filing of a certificate of incorporation in the office of the secretary of state for New York. The substance of what appellant asked therefore was that this corporate entity be annulled, and that the 1923 corporation, which had ceased to exist (section 22 of the Stock Corporation Law of New York [Consol. Laws, c. 59]), be resurrected. The court below held that the bill did not warrant the granting of that relief. In support of that ruling, appellee contends that a court, state or federal, sitting in one state has no power to interfere with the internal affairs of a corporation organized and existing under the laws of another state. Appellant contends that the relief sought was within the general jurisdiction of the court, and, the directors, officers, and business of the corporation being within its territorial jurisdiction, neither policy nor expediency required that the court deny the relief on the ground that the internal affairs of the corporation would be affected.

[2] Questions that suggest themselves, in view of the character of the suit, akin to quo warranto, are whether such a suit could be maintained in the state of New York by any one except the legal representative of the state, and, if so, whether a court sitting in another state and entertaining such a suit has the power to enter a decree in personam which in effect nullifies a power granted by the state of New York, and whether and in what manner obedience to such a decree could be enforced. We pass these questions, however, and treat the action as one having the more limited aim of administering the internal affairs of a foreign corporation, accepting the general rule without deciding its applicability to this case, that, where the parties are before the court and the res beyond its jurisdiction, decrees in personam may be entered and obedience thereto enforced against the person, the decree, of course, not operating upon the res. Louisville & Nashville Railroad Co. v. Western Union Telegraph Co. (6 C. C. A.) 207 F. 1. We may also observe that there are many cases in which decrees have been entered affecting property not within the territorial jurisdiction of the court, as for example in Massie v. Watts, 6 Cranch, 148, 3 L. Ed. 181, Phelps v. McDonald, 99 U. S. 298, 25 L. Ed. 473, and Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439. It is nevertheless true that lack of convenience in enforcing decrees concerning the internal management of a foreign corporation, if no other consideration, has led the courts generally to refrain from entering such decrees. Perhaps there are cases in which this course has not been followed. See American Creosote Works, Inc., v. Powell (C. C. A.) 298 F. 417. Generally it is. Kimball v. St. Louis & San Francisco R. Co., 157 Mass. 7, 31 N. E. 697, 34 Am. St. Rep. 250; Hogue v. American Steel Foundries, 247 Pa. 12, 92 A. 1073; Sprague v. Universal Voting Machine Co., 134 Ill. App. 379; Chicago Title & Trust Co. v. Newman (7 C. C. A.) 187 F. 573; Republican Mountain Silver Mines v. Brown (8 C. C. A.) 58 F. 645, 24 L. R. A. 776; Leary v. Columbia River & P. S., etc., Co. (C. C.) 82 F. 775; Hanssen v. Pusey & Jones Co. (D. C.) 276 F. 296.

[3] Assuredly an action to annul a corporate charter or to determine the validity of a corporate organization has to do with the internal affairs of the corporation. Such an action should not be entertained by a court sitting in another state from that in which the corporation was organized except, perhaps, upon a definite showing of fraud in the very creation of the corporation itself. In American Seating Co. v. Bullard (6 C. C. A.) 290 F. 897, relied on by plaintiff, the court dealt, not with the internal affairs of the corporation, but with threatened action unauthorized by the laws of the state under which the corporation was organized. No such question is presented in this case. Nor is it claimed that the organizers of this corporation omitted doing anything necessary to make it a legal corporate entity. It was organized under sections 20 and 22 of the Stock Corporation Laws of the state of New York, and is now an existing entity under those laws. The allegations from which it is said fraud is to be inferred are: That

the directors in the new company, if employees, are permitted to acquire a limited number of shares of its common stock set aside for employees, whereas the directors in the old corporation were not permitted to acquire such stock set aside for the employees; that the reorganization plan of exchanging the preferred stock in the old corporation for the more valuable preferred stock in the new was in the interest of the individual defendants, who between January 1, 1925, and January, 1926, disposed of a part of their common stock in the old company and acquired additional preferred stock therein (what amount is not stated in either case) knowing that the reorganization would be effected; and that there was mismanagement amounting to fraud in applying accumulated funds of the old corporation to its debenture obligations rather than to the retirement of its preferred stock.

[4] As to the action of the stockholders and directors who effected the reincorporation, it suffices, we think, to say that, at a stockholders' meeting to reorganize a corporation, a stockholder may ordinarily vote his stock in his own interest without committing a fraud that affects the validity of the reorganization. It may be said, however, that the wisdom of exchanging stock of the new corporation, having a dividend rate of five dollars a share and redeemable at sixty, for stock in the old corporation, with a dividend rate of four dollars a share and redeemable at fifty, is not apparent to us, in view of the fact that funds available for retiring the old stock were used to retire debenture obligations bearing interest at the rate of 6 per cent. per annum. Hence it may be that this feature of the reincorporation was for the benefit of the preferred stockholders and not in the best interest of the common stockholders; and yet a majority of the common stockholders holding a greater number of shares of that stock than all of the outstanding preferred stock voted for the consummation of that plan. Whether they acted wrongfully or not, a question we do not decide, neither in that nor any other act alleged was there such fraud in the creation of the corporation as would justify this court in passing upon the question as to whether it should be dissolved.

The decree dismissed the bill as to all defendants. The motion to dismiss was directed solely to the corporate defendant. To that extent the decree is affirmed, but it is set aside as to the individual defendants and the case reinstated on the docket as to them. It follows, of course, from what we have said, that the suit will not be entertained as to any relief sought against those defendants in so far as it might involve interference with the internal affairs of the corporation. It may, however, be entertained against them as to any relief in law or equity not involving such interference with respect to which we naturally refrain from expressing an opinion.